'(March 9, 1891.)'

# SNYDER v. VIOLA MINING AND SMELTING COMPANY.

### [26 Pac. 127.]

FELLOW-SERVANT—CONTRIBUTORY NEGLIGENCE OF EMPLOYEE.—Fellow-servant S. was a miner engaged in underground work. G. was a blacksmith engaged in same mine, in sharpening tools for use of miners, and whose duty it was to deliver such tools after being sharpened to miners at work in mine. Held, that S. and G. were fellow-servants, and held, further, that for carelessness in delivering such tools to miners by G., whereby S. was injured, defendant was not liable; defendant not being shown to be in fault.

EVIDENCE—CONTRIBUTORY NEGLIGENCE—LIABILITY OF COMPANY.— Where the evidence shows that the defendant had furnished safe and convenient machinery and appliances for the performance of

the required labor, and either the plaintiff or his fellow-servant, or both, for their own convenience, had seen fit to use other means or appliances than those furnished by defendant, and injury results therefrom, the defendant is not liable, and in such case plaintiff is guilty of contributory negligence.

(Syllabus by the court.)

APPEAL from District Court, Lemhi County.

Stewart & Morgan, for Appellant.

A master is not, in general, bound to indemnify his servant against the negligence of a fellow-servant when acting in discharge of his duty as servant of the common master. (*Priestley v. Fowler,* 3 Mees. & W. 1; Smith on Master and Servant, 237; *Farwell v. Railroad Co.,* 4 Met. (Mass.) 49, 38 Am. Dec. 339, and note; *Hutchinson v. Railroad Co.,* 5 Ex. 343; *Coon v. Railroad Co.,* 5 N. Y. 492; *White v. Kennon,* 83 Ga. 343, 9 S. E. 1082.) The rule exempting the master is the same though the workmen are not of the same grade. (*Hayes v. Railroad Co.,* 3 Cush. 270; *Albro v. Canal Co.,* 6 Cush. 75; *Crispin v. Babbitt,* 81 N. Y. 520, 37 Am. Rep. 521.)

Hawley, Reeves & Quarles, for Respondent.

Violation of rules of a company is no defense where the servant never had his attention called to them. (*Fay v. Railway Co.,* 30 Minn. 231, 15 N. W. 241.) Where an employee is injured partly through the contributory negligence of his coservant, but mainly by the unsafe condition of the track on which he was running, the contributory negligence of the coservant does not relieve the company from liability. (*Stetlar v. Railroad Co.,* 46 Wis. 497, 1 N. W. 118; *Paulmier v. Railway Co.,* 34 N. J. L. 151; *Stetlar v. Railway Co.,* 49 Wis. 609, 6 N. W. 303; Wood on Master and Servant, sec. 405; *Railway Co. v. Cummings,* 106 U. S. 700, 1 Sup. Ct. Rep. 493.) A motion of nonsuit is waived by the subsequent introduction of testimony by defendant. (*Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177; *Railway Co. v. Cummings,* 106 U. S. 700, 1 Sup. Ct. Rep. 493; *Insurance Co. v. Crandall,* 120 U. S. 530, 7 Sup. Ct. Rep. 685.) The rule which exempts the master from liability for injuries caused by one fellow-servant to another does not extend to

the case of servants serving in distinct departments of the master's general business.    (*Kielley v. Mining Co.*, 3 Saw. 437, Fed. Cas. No. 7760.)

HUSTON, J.—This is an action brought by plaintiff against defendant corporation to recover damages for injuries alleged to have been received by the plaintiff while in the employ of the defendant, as a miner, working in the Viola mine, owned and operated by defendant, in Lemhi county, in this state, which injuries plaintiff charges were the result of and attributable to the negligence of defendant.    We are called upon *in limine* to pass upon the motion of respondent to strike out the statement and dismiss the appeal in this case, first, because it does not appear by the record that the judge of the district court, in allowing an extension of the time for defendant to prepare and serve its statement, made such allowance upon good cause shown, as provided in section 4932 of the Revised Statutes of Idaho.    We do not think it necessary that the record should contain the evidence upon which the action of the district judge was predicated.    The presumption of law is that good cause was shown, and such presumption can only be overcome by proof.    No attempt at such proof is shown.

The next objection by the respondent is that this court cannot review the exception of defendant to the charge of the court, for the reason that such exception was not taken in time, and is too general to entitle it to consideration on appeal.    We do not think this case comes within the purview of the rule laid down in *Black v. City of Lewiston*, 2 Idaho, 276, 13 Pac. 80.    The following language by Mr. Justice Miller in the case of *Railroad Co. v. Reeves*, 10 Wall. 189, seems to us to be more applicable in this case: "As to the charge given by the court, the language of the exception is more general than we could desire; and if the errors of this charge were less apparent, or if there was any reason to suppose they were inadvertent, and might have been corrected if specified by counsel at the time, we would have some difficulty in holding the exception to it sufficient.    But the whole charge proceeds upon a theory of the law of common carriers, as it regards the effect of loss from the act of God on the contract, so different from our views of the law on that sub-

ject that it needs no special effort to draw attention to it, and it is so clearly and frankly stated as to have made it the turning point of the case. We are of opinion, then, that both the refusal to charge as requested and the charge actually given are properly before us for examination." So, in this case, we think the exposition of the law of negligence, as applicable to the evidence in this case, given by the district court in its charge to the jury, was so erroneous as to bring it clearly within the rule laid down by the supreme court of the United States in *Railroad Co. v. Reeves,* above cited. No point is sought to be made by the respondent against the exceptions of defendant to the refusal of the court to give instructions 1 and 2, asked by defendant. We will consider those instructions further on.

The facts in this case, as shown by the evidence—and there is but little conflict in the testimony—are briefly as follows: The appellant, defendant below, was on the 15th of February, 1889, the owner of and engaged in working and operating the Viola mine, in Lemhi county, Idaho; that on that date the respondent, plaintiff below, was in the employ of defendant as a miner in said mine; that on the date last aforesaid the plaintiff was at work in a drift about one hundred and ten feet below the surface of the ground; that he had been thus employed for some months, and on this day it became necessary for him to ascend to the surface for some purpose. There was a shaft some four or five feet square, sided up with lumber, extending from the surface to the level where plaintiff was at work, and below. Through and up this shaft, ore, etc., was hoisted to the surface from below by means of a steam-hoist, located on the surface, and near the mouth or entrance of the shaft. As is usual in such cases, there was a ladder at the side of the shaft, presumably for use in ascending or descending the shaft, whenever the exigencies of the work or the convenience of the workmen required. Extending from the surface to the level below, there was at the time last mentioned a large rope. The evidence shows that the steam-hoist had not been used regularly for a period of several months. There was also a wire attached to a bell on the surface, and extending down the shaft, which was used as a signal, by those working below to those above, of the presence of some person in the shaft. The blacksmith, one

Goodall, employed by the defendant in sharpening the picks, drills, and other tools used by the miners, had been in the habit, as he testifies, and he is undisputed on this point, for a long time, when the steam-hoist was not being run, of lowering the drills, picks, etc., sharpened by him, to the level below, by attaching them to the large rope above referred to by means of a smaller rope, the end of which he held in his hand, and allowing them to slide down the large rope to the level, while descending himself by the ladder, and delivering the said tools to the miners in the drift where they were at work. This was the condition of things on the fifteenth day of February, 1889, when the plaintiff attempted to ascend the shaft from the level by means of the ladder aforementioned. He had proceeded but a short distance up the ladder when he was, as he testified, struck upon the head and arm by a drill then being lowered by the blacksmith down the rope as above described, and received thereby the injuries complained of, and for which he seeks to recover damages of the defendant.

The first question for our consideration is, Was there negligence on the part of the defendant in a failure to furnish sufficient and safe appliances and machinery for the performance of the labor upon which the plaintiff was engaged? It is nowhere assumed, or attempted to be proven, that there was any defect in any of the machinery or appliances in or about the mine, nor that the injury of plaintiff resulted from or was in any way attributable to a want of proper machinery or appliances, or to any defect in the machinery or appliances provided by defendant. In fact, the case seems to have been tried wholly upon the theory that the accident which resulted in the injury to the plaintiff resulted entirely from the negligence or want of care of the blacksmith Goodall, and that, Goodall not being a fellow-servant of plaintiff, defendant is liable for any injury resulting from such negligence or want of care on his part. The plaintiff alleges in his complaint "that at the time plaintiff entered into the employment of the defendant, and from then up to the time said injury occurred, the regular and usual mode of letting all tools used in said mine down into the same was by means of a hoist and buckets." It is further shown by the testimony of the plaintiff himself that there was another shaft located about seven hundred or eight hundred feet, on the surface, from the

shaft in question; that said shafts were connected underground; and that at the other shaft there was a hoist which was running at the time. It was as easy for Goodall to let the tools down by one shaft as by the other, except that in one case a walk of some seven hundred or eight hundred feet on the surface, and a corresponding distance below, was involved. Every means necessary or requisite for the safe transmission of tools from the surface to the miners at work below, as well as for their safe entry to and exit from the mine, had been provided by the defendant. How, then, could the defendant be said to be guilty of negligence? We think the evidence in this case entirely fails to establish negligence on the part of the defendant. Mr. Beach, in his work entitled Contributory Negligence, says: "It is the common law in every state and territory of the Union, and in the federal courts, that a master or employer is not responsible to those engaged in his employment for injuries suffered by them as the result of negligence, carelessness, or misconduct of other servants in his employ, engaged in the same common or general service or employment, denominated 'fellow-servants' or 'coemployees,' unless the employer himself has been at fault"; and he adds: "This rule is so undisputed that it is sufficient to cite one leading or recent decision in point in each jurisdiction"; and he cites innumerable cases in support of the text. We think the district court erred when it assumed that the defendant had provided the means used by Goodall for getting the tools into the mine for any such purpose. On the contrary, we think the evidence clearly shows that the means employed by Goodall for getting the tools into the mine, to wit, by tying or fastening them to the large rope, was not the means provided by the defendant for that purpose. There was a bucket attached to another large rope, which, had it been used by Goodall, would doubtless have prevented any accident. If it is claimed that the hoist to which this rope was attached was not then running, we answer that there was another shaft easy of access, in which there was a rope and bucket, and which was running at the time, and the neglect of either the plaintiff or Goodall to avail themselves of such safe appliance cannot be attributed or charged as negligence on the part of defendant. We think the district court erred in its statement of the law as to

what constitutes a fellow-servant.     Says Mr. Beach, in his work
above referred to on Contributory Negligence: "In the present
state of the law, the essence of common employment is a com-
mon employer and payment from a common fund.     The weight
of authority is to the effect that all who work for a common
master, or who are subject to a common control, or derive their
compensation from a common source, and are engaged in the
same general employment, working to accomplish the same gen-
eral end, though it may be in different departments or grades
of it, are coemployees, who are held in law to assume the risk of
one another's negligence." (Beach on Contributory Negli-
gence, sec. 109, and cases cited in note 4.)     If this is the cor-
rect rule, and we so accept it, can there be any doubt that plain-
tiff and Goodall were fellow-servants?     The plaintiff having
failed to show negligence on the part of defendant, it seems to
us that the defendant's motion for a nonsuit should have been
granted.     Under the rule of law applicable thereto, as quoted
by us above from Beach on Contributory Negligence, which
seems to have been very generally, if not uniformly, recognized
by the courts of this country, we think that the fourth instruc-
tion asked by the defendant, and refused by the court, should
have been granted.     It seems to us that the plaintiff, in not
availing himself of any of the precautions usual, and which in
the exercise of ordinary care would have been adopted by a
prudent person in his situation, to wit, by signaling to those at
the surface, either by ringing the bell, calling up the shaft, or
carrying a light, was guilty of contributory negligence; and his
only excuse for not so doing is that "there was not supposed to
be anybody there, and nobody was supposed to be around there";
and yet it seems from the evidence that there were at least two
persons there at the time, i. e., Goodall and Ruhl.     The plain-
tiff cannot act upon his suppositions, and then, when he is in-
jured by reason of their being unfounded, make it the predicate
of a charge of negligence on the part of either the defendant or
his fellow-servant.     The judgment in this case is reversed, and
the cause remanded for a new trial.

Morgan, J., having been of counsel in this case, took no part
in the hearing or decision thereof.

Sullivan, C. J., concurs.