OLIVER S. SARTIN, Respondent, v. THE OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

No. 1528.     (76 Pac. 219.)

1. **Master and Servant: Injuries to Servant: What Law Governs.**

   The right to recover in an action against a master for injuries to a servant is governed by the law of the State where the injury occurred.

2. **Same: Negligence of Foreman: Fellow-Servants.**

   Plaintiff was a member of a railroad fence gang which was furnished with two hand cars to transport themselves and material from the various points where their cars were switched to the points where they were working, which cars were frequently run so close together that the workmen could talk from one car to another. On the occasion of plaintiff's injury, he was riding on the front car, which was closely followed by the other, on which the foreman was riding. Plaintiff was thrown from the car by a jar, and was run over by the rear car, which car was being run in violation of a rule of the company providing that, when two or more hand cars are run in the same direction, they should keep at least two telegraph poles apart, which rule

was known to the foreman. The law of the State where the action occurred was that all persons working under a common master, who were subject to a common control, derived their compensation from a common source, and were engaged in the same general employment, to accomplish the same general end, were fellow–servants. *Held*, that the foreman was the fellow–servant of plaintiff, and hence plaintiff could not recover for his negligence in permitting the rear car to be run in violation of the rule.[1]

(Decided April 11, 1904.)

Appeal from the Second District Court, Weber County, —*Hon. H. H. Rolapp*, Judge.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

REVERSED.

*P. L. Williams, Esq.*, and *George H. Smith, Esq.*, for appellant.

*Alfred W. Agee, Esq.*, for respondent.

STATEMENT OF FACTS.

In this action the plaintiff seeks to recover damages for personal injuries which he received while in the employ of the defendant railroad company. It appears he entered the employ of the company on June 29, 1902, in the State of Idaho, as a laborer and member of a "fence gang," whose duty it was to repair and build fences along the company's line of railway in that State. He remained in the employ of the company as such laborer continuously until the date of his injury, September 2, 1902. At that time the outfit cars in which

---

[1] See Stephani v. Southern Pac. Co., 19 Utah 196, 57 Pac. 34.

the men, including the foreman, lived, were stationed at Belleview, Idaho, but the gang were then working about 10 miles below that place. The men, 10 in number, including the foreman, who worked and rode with them, went to and from their place of work in two hand cars— 5 on each car—propelled by themselves. The cars were frequently run close together—so close that the parties could talk back and forth from one car to the other. The men, including the plaintiff, frequently raced with the cars, and on the morning and at the time when the accident occurred, the cars, with 5 men and some fencing material and tools on each car, were running very fast —at the rate of 10 to 15 miles per hour—the plaintiff being on the front car, and the foreman on the one in the rear. The foreman supervised the work of the fence gang, worked with the gang, and could employ and discharge men. He testified he "frequently directed the crew about running hand cars, and always forbade them running close together," and that he "endeavored to enforce the rule of not running hand cars too close together." The rule of the company on this subject was: "When two or more hand cars or push cars are running in the same direction, keep them at least two telegraph poles apart." But the foreman had not seen a printed rule. On the morning of the injury the rear car had been steadily gaining on the forward one, and several times was close to it. This was observed by the plaintiff and others just before the accident. Some of the evidence was to the effect that when the accident occurred the rear car ran against the forward one, so that the jar caused the plaintiff to lose his balance and fall off in front of the rear car, which ran over him, inflicting the injury of which he complains. There is other evidence tending to show that, when the plaintiff lost his balance and fell, the rear car was not within 20 or more feet of the front car, and that the jarring of the car from rough track caused him to fall off. Just before he lost his balance and fell, he had let go of the handle

bars, and was standing up on the car without holding onto anything, although he saw the rear car, as he says, close to his car just before he fell. At the same time one of his companions. who also fell off with him, was standing up in the same manner, with his watch in his hand, looking at the telegraph poles, as if timing the speed of the car, and according to the testimony of one of the witnesses, said, ''Let's see how fast we can make the next mile in.'' The evidence also shows that when the men held onto the handle bars, or to something stationary, there was no danger of falling off, and that, if they did not hold onto anything, they were liable to lose their balance, when the car was running fast, and fall off, even on a smooth track. The jury returned a verdict in favor of the plaintiff for the sum of $5,250. Thereafter a motion for a new trial was overruled, and judgment entered accordingly. The defendant appealed.

BARTCH, J., after stating the facts as above, delivered the opinion of the court.

At the close of the evidence in this case the defendant, among other things, requested the court to charge the jury that, ''as matter of law, the plaintiff is not entitled to recover in this action,'' and to direct them to return a verdict of ''no cause of action.'' This the court refused to do, and the appellant now contends that the refusal was error; that, if there was any negligence, it was that of a fellow-servant, for which the company was not liable. Upon careful examination of the question thus presented, under the law applicable to this case, and in the light of the facts disclosed by the evidence, we are of the opinion that this contention is well founded. The plaintiff was employed, and the accident which caused the injury occurred, in the State of Idaho. If the plaintiff was not himself negligent at the time of the injury— a question, under our view of the case, not necessary to decide—then, if the injury was the result of any negligence, it was the negligence of the foreman and

other members of the fence gang. That the company is not liable for the negligence of fellow-servants is not open to question under the law of Idaho; there being no charge that due and proper care was not exercised in the employment of the foreman or of any of the plaintiff's colaborers, or in the providing of properly equipped hand cars for the occasion. The foreman testified he knew that the practice, and rule growing out of it, was to run such hand cars about the distance of two telegraph poles apart. On the occasion in question it is clear from the evidence that the hand cars were being run close together, in violation of such rule and practice; and the foreman was on the rear car, but, so far as appears, made no objection, nor did the plaintiff or any other member of the party object, to the nearness of that car to the front one. Oblivious to the danger of thus running the cars, they went on until the accident occurred; the foreman being in charge of the entire party. If then we assume, from the conflicting evidence, that the plaintiff fell from his car and was injured because of a jar occasioned by the running of the rear car against the front one, the question is whether, under the laws of Idaho, which have been properly referred to and proved herein, the company is liable for injury thus caused by the negligence of its foreman, or whether the foreman was a fellow-servant, for whose negligence the employer was not liable. The right of recovery in such a case is governed by the *lex loci,* and not by the *lex fori.* Northern Pac. R. R. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958. At the time of the accident the general or common law rule on the subject of fellow-servants prevailed in that State. Mr. Beach, in his work on Contributory Negligence, section 324, states the law of fellow-servants as follows: "In the present state of the law the essence of common employment is a common employer, and payment from a common fund. The weight of authority is to the effect that all who work for a common master or who are subject to a common control, or

derive their compensation from a common source, and are engaged in the same general employment, working to accomplish the same general end, though it may be in different departments or grades of it, are coemployees, who are held, in law, to assume the risk of one another's negligence.'' In Snyder v. Viola Min. & Smelt. Co., 3 Idaho (Hasb.) 28, 26 Pac. 127, where the question was whether a blacksmith engaged in the same mine, sharpening tools for use of miners, and whose duty it was to deliver such tools, after being sharpened, to miners at work in the mine, was a fellowservant with the miners, the Supreme Court of Idaho, holding that he was such fellow-servant, and referring to the above rule of Mr. Beach, after quoting it, said: ''If this be the correct rule, and we so accept it, can there be any doubt that plaintiff and Goodall were fellow-sevants? The plaintiff having failed to show negligence on the part of defendant, it seems to us that the defendant's motion for a nonsuit should have been granted. Under the rule of law applicable thereto, as quoted by us from Beach on Contributory Negligence, which seems to have been very generally, if not uniformly, recognized by the courts of this country, we think that the fourth instruction asked by the defendant, and refused by the court, should have been granted.'' That, under the rule there recognized and adopted by the Supreme Court of that State, the foreman and the plaintiff were fellow-servants, we have no doubt. In the absence of a statutory provision in that State changing the general rule, the plaintiff and foreman were fellow-servants, notwithstanding the latter had authority to supervise the work and to employ and discharge workmen. Similar questions have been decided likewise by other courts. In Alaska Min. Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, where the plaintiff, one of a gang of laborers, claimed he was injured through the negligence of the foreman of the gang, Mr. Justice Gray, delivering the opinion of the court said: ''Finley was not a vice principal or

representative of the corporation.   He was not the general manager of its business, or superintendent of any department of that business.   But he was merely the foreman or boss of the particular gang of men to which the plaintiff belonged.   Whether he had or had not authority to engage and discharge the men under him, is immaterial.   Even if he had such authority he was none the less a fellow-servant with them, employed in the same department of business and under a common head.   There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose.   The negligence, if any, was his own negligence in using the machinery or in giving orders to the men.''   So, in Northern Pac. R. R. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, the plaintiff claimed he was injured because of the negligence of the foreman of a gang of laborers engaged in putting in repair three sections of the railroad. The foreman had charge of and superintended the gang in all matters connected with their employment, and had power to hire and discharge the hands who composed the gang.   Mr. Justice Peckham, speaking for the court, said: ''This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sections, aiding and assisting the regular gang of workmen upon each section as occasion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master, as would be necessary to render the master liable to a coemployee for his neglect.   He was in fact, as well as in law, a fellow workman.   He went with the gang to the place of work in the morning, stayed there with them during the day, superintended their work, giving directions in regard to it, and returned home with them in the evening; acting as a part of the crew of the hand car upon which they rode.   The mere fact, if it be a fact, that he did not actually handle a shovel or a pick, is an unimportant matter.   Where

more than one man is engaged in doing any particular work, it becomes almost a necessity that one should be boss and the other subordinate, but both are nevertheless fellow workmen.'' In Martin v. Atchison, etc., R. R., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051, it was said: ''We do not perceive that the doctrine as to the duty of the master to furnish a safe place for the servant to work in has the slightest application to the facts of this case. There is no intimation in the evidence, nor is any claim made, that the hand car upon which the plaintiff was riding was not properly equipped and in good repair, and in every way fit for the purpose for which it was used. It was a perfectly safe and proper means of transit, in and of itself, from the station at Albuquerque to the point where the plaintiff was going to work. The negligence of the section foreman in failing to notice the approaching train and to give the proper warning, so that the car might be taken from the track, was not the neglect of the defendant in regard to the performance of any duty which, as master, it owed the plaintiff. If the car were rendered unsafe, it was not by reason of any lack of diligence on the part of the defendant in providing a proper car, but the danger arose simply because a fellow-servant of the plaintiff failed to discharge his own duty in watching for the approach of a train from the south.'' Stephani v. Southern Pac. Co., 19 Utah 196, 57 Pac. 34; Farwell v. Boston & W. R. R., 4 Metc. (Mass.) 49, 38 Am. Dec. 339; Fagundes v. C. P. R. R. Co., 79 Cal. 97, 21 Pac. 437, 3 L. R. A. 824; Potter v. N. Y. & H. R. R. R. Co., 136 N. Y. 79, 32 N. E. 603; Young v. Boston & M. R. R. (Mass.), 46 N. E. 624; New England R. R. Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 355, 41 L. Ed. 746; Northern Pac. R. R. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009.

We are of the opinion that the foreman and plaintiff in this case, were fellow-servants, and that under the facts and circumstances disclosed by the record, and

the law of the State of Idaho applicable to such cases, the court erred in refusing to instruct the jury as requested, and in overruling the appellant's motion for a new trial. Such being the case, we do not deem it necessary to discuss and decide the other questions presented.

The judgment must be reversed, with costs, and the cause remanded. It is so ordered.

BASKIN, C. J. (concurring).—There is an irreconcilable conflict as to who are fellow-servants in the decisions of both the Federal and various State courts upon the subject. In some of them, as stated in Beach on Contributory Negligence, sec. 324, it is held "that all who work for a common master, or who are subject to a common control, or derive their compensation from a common source and are engaged in the same general employment, working to accomplish the same general end, though it may be in different departments or grades of it, are fellow-servants." In numerous other decisions in both the Federal Supreme Court and in several of the State Courts "it is held that where the negligent servant is, in his grade of employment, superior to the injured servant, or where one servant is placed by the employer in a position of subordination and subject to the orders and control of another in such a way and to such an extent that the servant so placed in control may reasonably be regarded as representing the master, as his *alter ego* or vice principal, when such inferior servant, without fault and while in discharge of his duty, is injured by the negligence of the superior servant, the master is liable in damages for the injury." In support of each of the foregoing sections about an equal number of cases are cited in the notes. There are a number of decisions which go still further, and hold, as in Armstrong v. Railway Co., 8 Utah 420, 423, 32 Pac. 693, 694, and Daniels v. U. P. Ry. Co., 6 Utah 357, 23 Pac. 762, that the term "fellow-servants" does not "include those not so associated in their employ-

ment as to be within the range of and subject to the influence of each other while about their work and in the actual discharge of their duties." The cases in Utah referred to were decided before any statute was enacted upon the subject of fellow-servants. In view of the irreconcilable conflict which so generally exists in the decisions as to who are fellow-servants, within the meaning of that term, I am unable to assent to the statement of my associate, Mr. Justice BARTCH, that "at the time of the accident [in this case] the general or common-law rule on the subject of fellow-servants prevailed in the State of Idaho;" and I concur in the reversal of the judgment only upon the ground that the law of the place where the injury occurred governs, and that the Supreme Court of that State, in the case of Snyder v. Viola M. & S. Co., 3 Idaho (Hasb.) 28, 26 Pac. 127, introduced in evidence by the appellant, and which is the only case called to the attention of this court upon the subject, having approved and adopted the text of section 324 of Beach on Contributory Negligence, we are bound by the decision in that case, and, under it and the facts disclosed by the evidence in the case at bar, the plaintiff and the foreman of the defendant were fellow-servants.

McCARTY, J. (concurring).—As we are governed in this State by the law as it is defined and declared by the Supreme Court of Idaho (the law of the place where the accident occurred), I concur in the judgment of reversal.