CHARLES M. EVANS, APPELLANT, v. MARY MESSICK ET AL., APPELLEES.

63 N. W. 2d 491

Filed April 2, 1954. No. 33446.

*E. H. Evans,* for appellant.

*Crosby & Crosby,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Charles M. Evans, plaintiff, in the district court for Lincoln County to recover property damage resulting from a collision between an automobile owned by him and being driven by his son Stanley Evans, and an automobile owned by Mary Messick and being driven by her husband John Messick, defendants. The collision occurred in a street intersection in the city of North Platte. At the conclusion of the plaintiff's evidence and at the conclusion of all of the evidence the defendants moved for a directed verdict and a dismissal of plaintiff's petition. The trial court overruled the motions for directed verdict but sustained the motion to dismiss the plaintiff's petition. At the conclusion of the defendants' evidence the trial court sustained the motion of the plaintiff to dismiss the cross-petitions of the defendants. From this order dismissing the plaintiff's petition, the plaintiff appeals. We refer to the parties as they were designated in the district court.

The pleadings of the parties may be summarized as follows. The plaintiff, in his petition, charged the defendant John Messick, the operator of Mary Messick's car, with negligence in the following respects: That the same was being driven at a high and excessive rate of speed in excess of the lawful speed limit and without regard to the traffic conditions existing at such time and place; that this driver did not maintain proper and sufficient lookout for existing traffic; that said reckless operation was condoned by the defendant owner of the automobile, and she failed to heed

conditions and to take necessary precautions to avoid the accident; and that by reason of the negligent and careless operation, the defendant's car did run into and upon and did collide with the car of the plaintiff and caused the total destruction of the plaintiff's automobile.

The defendants filed separate answers and cross-petitions. The answers were in effect general denials of the allegations of negligence pleaded in the plaintiff's petition, and alleged that the accident was caused by the negligence of the plaintiff's son. The cross-petitions of the defendants charged the plaintiff's son with negligence in failing to keep a proper lookout for other automobiles approaching the intersection; that he failed to give the right-of-way to this defendant's automobile which had entered the intersection before the plaintiff's automobile; that the plaintiff's son failed to keep plaintiff's automobile under control; and that the collision was caused solely and only by the carelessness and negligence of the plaintiff's son. Defendants prayed for damages.

The plaintiff's reply to the answers and cross-petitions of the defendants was in effect a general denial of the affirmative matter pleaded therein.

The record discloses that the plaintiff, at the time of the collision, was the owner of a 1950 Dodge Coronet four-door sedan which was kept and used for family purposes and will hereafter be referred to as the Dodge car; and that the plaintiff's son Stanley Evans was 17 years of age at the time of the accident, lived with his parents on a ranch 12 miles north of the city of North Platte, was licensed to drive an automobile, and had his father's consent to drive his automobile at the time the accident occurred. The defendant Mary Messick was the owner of a 1947 Chrysler Royal four-door sedan, hereafter referred to as the Chrysler car, which was used as a family car and at the time of the accident was operated by her husband John Messick.

The intersection here involved may be described as

follows: Tenth Street runs east and west in the city of North Platte and is paved with concrete for some distance. Dewey Street is a graveled street which runs north and south. The width of Tenth Street at the intersection involved is 36 feet, and the width of Dewey Street is 36 feet. The intersection is paved with cement. On the southeast corner of the intersection is a residence with a hedge 3½ or 4 feet in height which extends out to where the surveyed sidewalk would be located, to the east on the north side of the house and to the south on the west side of this corner of the intersection. There are also trees planted there. At the time of the accident the hedge and trees were leafed out. On the southwest corner of the intersection is a street light, and on the northwest corner of the intersection is a fire hydrant about 2½ or 3 feet in height. There are no stop signs at this intersection. The accident occurred on August 20, 1950, at approximately 9:30 p.m. The night was dark and clear.

Stanley Evans, the plaintiff's son, testified that he was familiar with the intersection, having driven in that vicinity on several occasions. On the night of the accident he had visited friends on East Tenth Street and was proceeding west on Tenth Street at a rate of speed of 25 miles an hour which he had maintained at all times. As he approached the intersection, he looked over the corner of the hedge south on Dewey Street to about the middle of the block. He could see car lights which to him seemed far enough away that he paid no further attention to this car. He thought he had plenty of time to proceed on across the intersection. He further testified in this respect that after he had looked over the corner of the hedge and seen the lights coming in the middle of the block south on Dewey Street, he thought no more about it and looked north and there was nothing coming from that direction. He did not look south again. He proceeded to cross the intersection and did not diminish his speed. After he saw the lights

of the Chrysler car he went about 40 feet before he came to the intersection. He did not deviate in any direction, but proceeded straight across the intersection. He had his car under control, and if he had had adequate warning, he could have stopped and avoided the accident. Under the circumstances, he could not have prevented the accident. He was using due care at all times. After having approached the intersection as above testified to, the next time the Chrysler car came to his attention, he heard brakes screeching. He slammed on his brakes and the two cars collided.

The evidence shows that the Chrysler car hit the Dodge car at the left front door, caved in the left front door, curled back the left front fender up to the bumper on the left side of the car, and shattered the windshield. The front end of the Chrysler car, the radiator, grille, and hood were caved in and the right front fender was damaged; that is, the whole front of the Chrysler car was damaged. Due to the impact, the Dodge car rolled over completely, going over the fire hydrant, and coming to a stop upon its wheels in the northwest corner of the intersection. It had been knocked in this direction about 49 feet.

Stanley Evans further testified that he was unable to compare the speed of the two cars, but believed that the Chrysler car was traveling faster than he was. The accident occurred a "split second" after he heard the screeching of the brakes.

The Chrysler car was occupied by John Messick who was driving, his wife Mary Messick who sat in the right front seat, Arleta Benham, Mary Messick's sister, who sat on the left side of the back seat, and her husband Dale Benham who sat on the right side of the back seat. This party was on its way to Stapleton to see Mary Messick's father who had suffered a heart attack.

John Messick testified that just prior to the time of the accident they were driving north on Dewey Street. When they came to Ninth Street they slowed down,

almost to a stop, to permit a car traveling on Ninth Street to pass in front of them. Then the speed of the Chrysler car was accelerated to 20 or 25 miles an hour between Ninth and Tenth Streets. As they approached the intersection there were no other vehicles in sight. He looked both ways and could not see any cars coming in either direction, and proceeded into the intersection. He heard his sister-in-law scream, glanced to the right, and saw the Dodge car approaching from the east. He thought the Chrysler car would be hit "square in the middle," but the Dodge car started swerving to the north and was in front of him at the time of the impact. He applied his brakes just after he entered the intersection. As he proceeded north on Dewey Street his vision was obstructed by the trees and hedge on the east side of Dewey Street. He was possibly 10 feet from this hedge, but could not see through it. However, he slowed up enough after passing the hedge so that he could see. He had his foot off the accelerator and did not see the Dodge car. He did not put his foot on the brake while the Chrysler was on the gravel. After the impact the Chrysler turned around in its tracks and headed south, then to the west, and back south. The impact caused the Chrysler car to pull around from the original line of its direction and turn to where it headed back in a southwesterly direction and stop 5 or 6 feet west of the point of impact.

Mary Ellen Messick testified that at the intersection her husband slowed down, then proceeded on to cross the intersection; that her sister screamed; and that the driver of the Chrysler put his foot on the brake and that slowed the car down. At that time they had passed the center of the intersection. When she saw the lights of the Dodge car she believed it was going to hit the Chrysler on the side, and the first thing she knew the Dodge car was in front of the Chrysler. She was thrown out of the right front door onto the pavement a distance of 7 or 8 feet, and received personal injuries.

Arleta Benham testified that she first saw the Dodge car lights after the Chrysler car had cleared the hedge and was in the vicinity where the sidewalk crosses Dewey Street. She screamed, and at that time the Dodge car was about one or two car lengths back of the sidewalk.

Dale Benham testified that he saw a car approaching from the east. It was between the sidewalk and the pavement of the intersection, and was at an angle and approximately in front of the second house on the north side of Tenth Street.

There is no dispute that both of the motorists were traveling on their own right side of the street.

The police captain and another police officer arrived at the scene of the accident shortly before 10 p.m. The police captain testified that when they arrived the Dodge car was 11 feet west of the fire hydrant on the curb in the northwest corner of the intersection, headed southwest at an angle, a little more south than west. Stanley Evans was standing by the Dodge car and the defendants Messick were out of their car. John Messick explained that they were on their way to Stapleton; that his wife's father had suffered a heart attack; and that they were hurrying around and trying to get there. Mary Messick said they "were hurrying too fast." This part of this witness's testimony is denied by John Messick. The Chrysler car was toward the southwest corner of the intersection, headed southwest. The officers determined where the cars came together by skid marks which they measured, and fixed the point of impact in the northeast part of the intersection, north of the center line of Tenth Street. That is, by drawing a line through the center of Dewey Street at the intersection, the point of impact would be 5 or 6 feet east of the center of the intersection. Glass was broken out of the Dodge and scattered across the pavement. The rate of speed in this residential district is 25 miles an hour. The officers traced the skid marks of the Chrysler

car from the point of impact south 49 feet. These skid marks showed that the brakes were applied 10 or 11 feet off the paved portion of the intersection on Dewey Street which is graveled. There were skid marks made by the Dodge car about 7 feet prior to the point of impact. Neither the Dodge car nor the Chrysler car had turned one way or the other at the time of the impact. The hedge at the intersection would obstruct the vision of a driver proceeding north on Dewey Street as he would look east on Tenth Street, and this would be true of a driver proceeding west on Tenth Street approaching the intersection and looking in a southerly direction. The other police officer corroborated this testimony.

The plaintiff assigns as error that the trial court erred in dismissing plaintiff's action upon the motion of the defendants at the close of the evidence; and that the trial court erred in overruling plaintiff's motion for a new trial.

In determining this appeal we bear in mind the following rule: A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. See Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107.

The law provides that when a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see an automobile not shown to be in a favored position, the presumption is that its driver will respect his right-of-way and the question of his contributory negli-

gence in proceeding to cross the intersection is a jury question. See, Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617; Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367; Gorman v. Dalgas, 151 Neb. 1, 36 N. W. 2d 561; Becks v. Schuster, 154 Neb. 360, 48 N. W. 2d 67; Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

The law also provides that where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right-of-way, and he may ordinarily proceed to cross, having a legal right to assume that his right-of-way will we respected by the other driver, but if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way. See, Gorman v. Dalgas, *supra*; Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596; Becks v. Schuster, *supra.*

It is only where the evidence shows beyond dispute that plaintiff's negligence is more than slight as compared with defendant's negligence that it is proper for the trial court to instruct the jury to return a verdict or, as in the instant case, to dismiss the plaintiff's petition. See, Pahl v. Sprague, *supra;* Gorman v. Dalgas, *supra.*

It is true that the plaintiff's car, being on the right of the defendant's car, was in the favored position and had the right-of-way, other things being equal, but that did not do away with the duty of its driver to exercise ordinary care to avoid an accident. See Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585. See, also, Klement v. Lindell, 139 Neb. 540, 298 N. W. 137; Andrews v. Clapper, 133 Neb. 110, 274 N. W. 209; Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

We refer to the following facts which indicate the reason for the trial court dismissing the plaintiff's case. The plaintiff's son testified: "I was going east on 10th

Street—west on 10th Street, and I come to the intersection. There is a hedge on the southeast corner. And I could see over the hedge—the corner of the hedge, to about the middle of the block, and I could see car lights and they seemed far enough away, I never paid any more attention, because I thought I had time to proceed on across the intersection and have plenty of time." The plaintiff's car was traveling at a rate of speed at that time of 25 miles an hour. The Chrysler car, when plaintiff's son first saw it, was approximately in the center of the block south of the intersection, proceeding north at a rate of speed of from 20 to 25 miles an hour. The plaintiff's car then traveled a distance of 40 feet to reach the intersection after the one and only time the plaintiff's son looked and saw the Chrysler car. He looked to the south just the one time. After that he looked to the north. A little later than the time he looked to the north the collision occurred. He testified that he was familiar with the intersection and had traveled over it on several occasions. This being true, he must have been acquainted with the fact that the hedge would obstruct his vision to the south of the intersection and would also obstruct the vision of a driver proceeding north on Dewey Street toward the intersection and looking toward the east on Tenth Street.

We believe the case of Nelson v. Plautz, 130 Neb. 641, 265 N. W. 885, is applicable in some respects to the instant case. In the cited case the collision occurred in the intersection of a north and south highway known as the Emerald highway, and a road running northwest and southeast called the Malcolm highway. Neither highway was protected by stop signs. About 100 feet south of the intersection was a railroad track. When the plaintiff's car was on the railroad track the driver looked both ways on the Malcolm highway and saw no car approaching. He could see for a quarter of a mile to the northwest. After he left the railroad track his view of the Malcolm highway was obstructed by tall weeds

for 20 or 30 feet, but when he reached a point 50 feet from the railroad track he could have seen up and down the Malcolm highway. But he never looked again after leaving the railroad track. This court, in considering the facts and circumstances heretofore related, held: "The failure of the driver of an automobile, upon approaching an intersection, to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid the collision that resulted, is, in the circumstances of this case, more than slight negligence, as a matter of law, and defeats a recovery."

This court has held that the failure of the driver of an automobile, upon approaching an intersection, to look for vehicles approaching the same intersection, where by looking, a collision could be avoided, constitutes negligence more than slight and operates to defeat a recovery. See, Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790; Whitaker v. Keogh, *supra*.

We believe, in the circumstances of this case, the negligence of the plaintiff's son was more than slight as a matter of law, and defeats recovery in behalf of the plaintiff.

For the reasons given herein, we conclude that the trial court did not err as contended for by the plaintiff, and the judgment of the trial court should be affirmed.

AFFIRMED.