VICTORIA BARAJAS, APPELLEE AND CROSS-APPELLANT, V. MARIE E. PARKER ET AL., APPELLANTS AND CROSS-APPELLEES.

85 N. W. 2d 894

Filed November 15, 1957. No. 34238.

*Heaton & Heaton* and *Healey, Davies, Wilson & Barlow,* for appellants.

*Wright, Simmons & Harris,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for damages by Victoria Barajas,

plaintiff, and appellee and cross-appellant, for personal injuries, for loss of earnings, for loss of earning capacity, and for medical, surgical, and hospital expenses sustained and which will in the future become necessary, all occasioned by the alleged negligence of Marie E. Parker while she was engaged in the operation of an automobile belonging to Cliff R. Parker which automobile came into collision with an automobile owned and operated by the plaintiff. Marie E. Parker and Cliff R. Parker are defendants and appellants and cross-appellees. A trial of the action was had to a jury at the conclusion of which a verdict was returned, in response to requests for special findings submitted by the trial court, in favor of the plaintiff. The total of her damages was fixed at $22,147.50.

Following the rendition of the verdict the defendants filed a motion for new trial or in the alternative for a judgment notwithstanding the verdict. They had on the trial at the conclusion of plaintiff's evidence and again at the conclusion of all of the evidence moved for a directed verdict. The plaintiff filed a motion for judgment for $22,147.50 or in the alternative for a new trial. The motion of the plaintiff for judgment for $22,147.50 was overruled. The defendants' alternative motion for judgment notwithstanding the verdict or for new trial was overruled. The findings as to damages were accepted by the court. A new trial as to negligence was granted on the motion of the plaintiff.

From this adjudication the defendants have appealed and the plaintiff has cross-appealed.

The defendants have set forth numerous alleged errors which they insist are grounds for reversal as has also the plaintiff. Whether or not any others require consideration depends upon the conclusion reached as to the defendants' third assignment of error which is as follows: "The District Court erred in overruling Defendants' Motion for Judgment Notwithstanding the Verdict."

The point of this assignment of error, as was also true of a point of the motions for directed verdict, was that the plaintiff herself was at the time of the collision guilty of contributory negligence which was sufficient as a matter of law to defeat a recovery of damages by her.

Before proceeding to a consideration of the merits of this assignment of error it appears well to point out that the parties have stipulated that the automobile which was being used by Marie E. Parker was owned by Cliff R. Parker and that at the time in question it was being used for a family purpose. The effect of this is to say that Cliff R. Parker was liable to respond for negligence, if any, of Marie E. Parker.

The collision took place at an intersection of two public highways in Cheyenne County, Nebraska, about 3 miles west of Dalton. The time was about 6:20 p.m. It was in daylight. The weather was good, the atmosphere was clear, and the roads were dry. The plaintiff was traveling northward and Marie E. Parker, who will be hereinafter referred to for convenience as the defendant, was traveling in an easterly direction. The two automobiles came into collision in the intersection. It appears from exhibits that the front end of defendant's automobile struck the automobile of plaintiff on its left side. Neither the plaintiff nor the defendant was able to describe the collision. A witness who was some distance to the east observed the collision but was unable to describe it with any degree of accuracy. The plaintiff was to the right of the defendant with reference to the intersection.

The plaintiff in response to questions described her acts and conduct immediately before and leading up to the collision. She testified that she had no recollection of the collision itself. The pertinent questions and answers on direct examination are as follows: "Q Then tell the jury what happened after that on that day? A * * * I was driving through this dirt road—short

cut, they called it—and I was driving along at this certain time, and all of a sudden, everything went black. I don't remember anything after that. Q Now, the last thing you remember, were you driving? A Yes. * * * Q Now, do you remember how fast you were driving? A About 45 or 50. * * * Q Now, do you know where you were, the last thing you can remember? A No, I don't. I just remember driving along, singing to myself, and then, of course, watching the road straight ahead of me, and after that I went into that blackness, and that is all." Questions and answers on cross-examination were as follows: "Q Now my notes state that you said you were driving about 45 or 50 miles an hour, looking straight ahead. Is that correct? A Yes. Q Now just before the accident, did you see a car or truck or pick-up coming from the right? A No, I didn't. Q Did you look to the right? A I don't believe so. Q Did you see anything coming from the left? A No, I didn't. Q Did you look to the left? A I don't know. Q You don't know? A I don't remember. Q Now, were there any trees to the left as you approached the intersection? A I don't remember any trees. Q Did you see any trees? A No. Q You didn't see any trees? A I don't remember seeing anything. Q It was daylight? A Yes. Q And if there had been trees there, you could have seen them if you had looked? A I suppose. Q Now, did you slow up before the accident, or did you proceed at the same speed you had been traveling? A I think at the same speed. * * * Q Did you apply your brakes before the accident? A No. I didn't know there was going to be one. * * * Q Did you turn to the right? A I don't think so. Q Did you do anything to avoid the accident? A Well, I didn't see any cars or anything, at the corner or anything, so I didn't see any reason to. * * * Q But you didn't look? A No. I was watching my road straight ahead. Q You were looking straight ahead? A Yes. Q So, you looked neither to the right or left? A No. Q You didn't slacken your

speed? A No. Q You did nothing to avoid the accident? A No. Q You were driving along, singing to yourself? A Yes."

With regard to the acts and absence and failure to act and observe, certain questions were asked and answers elicited from plaintiff on redirect examination which will not be quoted herein. The apparent purpose was to leave an inference that what plaintiff said in her direct and cross-examination related to a time prior to her approach to and entry into the intersection and to leave the record with an absence of information as to what she did or failed to do at the time of approach and entry. The questions and answers in this respect demonstrate the futility of the effort when examined in the light of the unequivocal declarations made on direct and cross-examination. The evidence of plaintiff discloses that she performed no act and made no observation in the interest of her own safety as she approached and entered the intersection.

At the intersection involved here the plaintiff had the right-of-way under the facts disclosed. It appears that the plaintiff and defendant approached the intersection at about the same time and at about the same rate of speed. "A motorist entering an intersection from the right is in a favored position and has the right-of-way, other things being equal, but such fact does not do away with the duty of the driver of the favored car to exercise ordinary care to avoid an accident." Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491. See, also, Parsons v. Cooperman, 161 Neb. 292, 73 N. W. 2d 235; Wendel v. Carlson, 162 Neb. 742, 77 N. W. 2d 212.

Ordinary care to avoid an accident within the meaning of this pronouncement has not been exercised if the driver of an automobile has failed upon approaching an intersection to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid a collision. Such failure would be negligence more than slight as a matter of law and

would defeat a recovery. In Evans v. Messick, *supra,* it was said: "The failure of the driver of an automobile, upon approaching an intersection, to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid the collision that resulted, is more than slight negligence, as a matter of law, and defeats a recovery." See, also, Wendel v. Carlson, *supra.*

In this case the testimony of plaintiff discloses that the plaintiff did not look in the direction from which the defendant was approaching. This, in the light of the facts and law, amounted to contributory negligence more than slight. It was her duty to look for approaching automobiles and to see those within the radius that denoted the limit of danger. See, Evans v. Messick, *supra;* Miller v. Aitkin, 160 Neb. 97, 69 N. W. 2d 290.

This radius was narrowly limited in the present instance but this could not be a basis for departure from the rule. The ground area itself apparently did not prevent a view of the intersection from $\frac{3}{4}$ mile to the south and almost $\frac{1}{4}$ mile to the west. The view however from the south to the west and from the west to the south of the intersection was obstructed by a hedge or row of small trees of a height estimated by witnesses to be from 12 to 30 feet. Vision through the hedge was difficult. The hedge was about 25 feet south of the east and west road. The east end was 42 feet west of the east edge of the north and south road. The radial area was not otherwise described.

In the light of the record in this case it must be said that the plaintiff failed to exercise ordinary care to avoid the accident in which she was involved in consequence of which she was, as a matter of law, guilty of contributory negligence more than slight and is thereby barred from recovery. Accordingly the trial court should have sustained the motion of the defendants for judgment notwithstanding the verdict. This conclusion renders unnecessary a consideration of the other

errors assigned on appeal and cross-appeal.

The order of the district court granting a new trial is reversed and the cause remanded with directions to sustain the motion of defendants for judgment notwithstanding the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.