375 P.2d 125

Alden J. DRURY, Plaintiff-Appellant,

v.

Max PALMER and Merlin T. Whittle, Defendants-Respondents.

No. 9077.

Supreme Court of Idaho.

Oct. 4, 1962.

560

Gee & Hargraves, Pocatello, for appellant.

Hugh C. Maguire, Pocatello, for respondents.

McFADDEN, Justice.

Shortly after six a. m., on October 3, 1958, appellant Drury was driving a pas-

senger car west along Fairview road in Franklin County, an oiled road. This road, is intersected by a gravel road known as the County road, which runs generally north and south. The intersection of these two roads was not marked by stop signs or other markers. Respondent Palmer, at the time, in the employ of respondent Whittle, was driving a truck north on the County road. The two vehicles collided near the middle of the intersection, the front bumper of the truck striking the passenger car behind its front left wheel and along the left side of the car. Both drivers were knocked unconscious, Drury being thrown from his car, sustaining fractures of his hip and other injuries.

There were no witnesses, other than the drivers, to the accident itself. Both drivers testified they never saw the other's vehicle until immediately before the accident, although Palmer testified that some time later " * * * Mr. Drury told me that he had seen me and thought he would beat me; thought he would pass before I would, or thought he would beat me at the intersection."

The roads were dry, clear of other traffic, the morning bright, and the intersection itself clear of obstructions to view. There were buildings on the grounds near three of the four corners of land forming the intersection. In the southeast corner there was a garage on Fairview Road about 33 feet east from the north and south road. A house was some 31 feet southeasterly from the end of the garage. In the southwest corner, there was a house set back from the roads an undisclosed distance. Respondent Whittle's home was in the northwest corner, setting back also an undisclosed distance. The northeast corner was open farming land.

The actual speed of the vehicles at the time of the accident was not definitely ascertained. Mr. Palmer testified: "I don't know how fast I was driving, but after I drove it several times after I kind of watched the speedometer to see about how fast you could drive it without bumping around too much, and its about 20 miles an hour is the way it felt to me." He did state, however, that he told the sheriff, "I remember telling him I was going about 30 miles an hour coming down the road."

Mr. Drury testified that he had been going about 40 miles an hour before the accident. There was no evidence either driver had applied brakes. Both drivers were thoroughly familiar with the roads and this particular intersection.

The case was tried before a jury which returned a verdict for respondents. Nine members of the jury joined in the verdict which reads:

"We, the Jury in the above entitled cause, find for the Defendants, *because*

*of contributory negligence on the part of the plaintiff."*

The underscored portion of the verdict having been added in longhand by the foreman of the jury. Judgment for respondents was entered; appellant's motion for new trial was presented and denied by the court, and this appeal was taken from the judgment and order denying the motion for new trial.

On this appeal, appellant first urges as a basis for reversal that there is no substantial, competent evidence of any causative contributory negligence on Drury's part. He further asserts that no instructions on contributory negligence should have been given at all, first because of lack of evidence, and secondly because the doctrine of contributory negligence should have no application in this type of case.

 We do not agree with either of these contentions. As to the contention that there is no evidence of contributory negligence, Sheriff Talbot, one of appellant's witnesses testified: "He (Mr. Drury) said he figured that he was going about 40 miles an hour at the time of the accident, and that he—if I recall right—he seen the truck just a half a second before it hit him." On cross-examination, Mr. Drury testified as follows:

"Q. Well, you didn't apply the brakes to your car, did you?

"A. No. There was no skid marks, as has been testified.

"Q. So then apparently you didn't see the automobile until just about the moment of collision, is that right?

"A. It would appear to be."

The record also discloses the statement by Mr. Drury to Mr. Palmer that Drury thought he would beat Palmer at the intersection. These facts alone are sufficient from which the jury could have found negligence on the part of Mr. Drury that contributed to his injuries in failing to maintain proper lookout. Appellant was under the duty to maintain a lookout for other vehicles approaching the intersection. The duty is not merely of looking, but is one of observation, imposing upon a motorist the necessity of being observant as to the traffic and general situation at or in the vicinity of the intersection. He must look in such prudent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others would have seen under like circumstances. 60 C.J.S. Motor Vehicles § 284c, p. 667; 5A Am.Jur. 678 and 685, Automobiles and Highway Traffic § 705, § 712; Shelton v. Detamore, 198 Va. 220, 93 S.E.2d 314; Kerns v. Lewis, 246 Mich. 423, 224 N.W. 647; Barajas v. Parker, 165 Neb. 444, 85 N.W.2d 894. Even if the jury determined that appellant did maintain proper lookout

and actually saw the truck, from the facts they could still reasonably have found that appellant failed to act as a reasonably prudent person under the circumstances in attempting to race the truck through the intersection. Under either interpretation, which was for the determination of the jury, contributory negligence could have been found.

Concerning the contention that under no circumstances should contributory negligence be considered as a defense, this doctrine or principle of law has been recognized as a defense in negligence actions even prior to statehood. Snyder v. Viola Mining & Smelting Co., 3 Idaho 28, 26 P. 127. Contributory negligence has been an integral part of the law since that time, and has been legislatively recognized since 1907. S.L.1907, p. 323 § 1. I.R.C.P. 8(c) likewise recognizes this doctrine.

Assignments of error are directed to certain instructions given by the court and the failure of the court to give other instructions requested by appellant, presenting his theory of the case.

No instruction was given, although requested, defining the term "negligence", nor was any instruction given by the court to the effect that the violation of driving laws of the State constitutes negligence, (unless under the circumstances such conduct was excusable, justifiable or such as might reasonably have been expected from a person of ordinary prudence.) The failure to give instructions on these points was prejudicial to the appellant and constitutes such error as requires a reversal. The theory of this action was based upon negligence; the jury were presented with the precise problem of determining whether the alleged negligence of Palmer, either by a violation of a specific statute, or by a failure to act as a reasonably prudent person would have acted under the circumstances was causative of Drury's injuries; the jury also had to resolve whether there was negligence on Drury's part that contributed to his injuries. The failure of the court to instruct on the principle that noncompliance with a statutory obligation is negligence (see: Howard v. Missman, 81 Idaho 82, 337 P.2d 592; State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272), and on the principle that negligence can also be the failure of a person to comply with his duty to act as a reasonably prudent person would under the circumstances, made impossible the application by the jury of the principles upon which the action was tried.

The court instructed the jury, by instruction No. 11, "You are instructed that one is presumed in law to see what he should have seen had his observance been careful and attentive." This bare statement, without amplification, is a truism and would not enlighten the jury on the ap-

plicable law. It is the obligation of an operator of a motor vehicle to keep proper lookout. The whole theory of motor vehicle law is based on the requirement that the operator keep his vehicle under control at all times, considering actual and potential hazards, which of necessity contemplates proper lookout by the operator. (I.C. § 49–701). It is not only the duty of the operator to look, but it is his duty to see and be cognizant of that which is plainly visible or obviously apparent, and a failure on his part in this regard, without proper justification or reason, makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care. 60 C.J.S. Motor Vehicles § 284, p. 661; 5A Am.Jur. 392, Automobiles and Highway Traffic § 265. Without amplification of the instruction as given to make the rule applicable to the case, the bare statement could do little other than confuse, it merely being a statement of law, without connection with the theories involved or factual situation presented.

Error was assigned in the refusal of the trial court to give that portion of appellant's requested Instruction No. 5, which stated the relationship of respondent Palmer to respondent Whittle as being one of employee and employer, and the conduct of Palmer in the scope of his authority was the conduct and responsibility of Whittle.

The failure to give this portion of the requested instruction was error. On a new trial, the instructions should properly cover this principle.

Appellant by his requested instruction No. 14, sought application of the rule that if the jury found Drury, as a result of his injuries suffered a lapse of memory, then it is presumed he was exercising due care for his own safety. Such instruction is not applicable where evidence is present in explanation of how the accident occurred. The rule imposing the burden of proof upon the defendant to establish contributory negligence is an adequate protection of the rights of plaintiffs. Mundy v. Johnson, 373 P.2d 755 [1]; Neff v. Hysen, 72 Idaho 470, 244 P.2d 146; Koch v. Elkins, 71 Idaho 50, 255 P.2d 457; Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317.

Appellant also assigns as error certain instructions given by the Court. Instruction 5, is challenged as being unnecessary, incomplete and misleading. This instruction phrased in the words of I.C. § 49–515(a), defined the term "Intersection". The issues to be resolved involved the rights of the respective parties on approaching an intersection, and there was no error committed in giving of that instruction.

Error is assigned to the giving of instruction No. 7, as follows:

1. Ante, p. 438.

"You are instructed that while there is no express provision in Sec. 49–727 for forfeiture of right of way by plaintiff who approaches an intersection at an unlawful rate of speed, such rule is implicit in the law of contributory negligence. So, if you the jury find that the plaintiff approached the intersection at an unlawful or dangerous rate of speed, or failed to drive at an appropriate reduced speed when approaching the intersection, and that such conduct was a contributing proximate cause of the collision, then the plaintiff cannot recover."

It is unnecessary to rule upon this assignment as this action is being reversed on other grounds. The instruction was given immediately following the instruction quoting portions of I.C. § 49–727, defining the duty of drivers approaching an intersection. This instruction was based on language appearing in Coughran v. Hickox, 82 Idaho, 18, 26, 348 P.2d 724. Upon a subsequent trial of this action if the court deems there is sufficient evidence as to excessive speed, or failure to reduce speed on the part of the plaintiff to make appropriate the application of this principle, the instruction should be amplified to encompass the limitations mentioned in the Coughran case, particularly keeping in mind that ordinarily a motorist may assume that the other travelers will obey the rules of the road.

Nor was error committed in the giving of instruction No. 8, which advised the jury that there are limitations on the right of way; that such items as circumstances of speed, control, traffic, weather conditions, obedience of the law of the road, giving proper warning, and keeping of careful lookout, in addition to the mere question of who has the right of way, must all be considered in determining which party was negligent. However, it should be pointed out that here there was no contention that adverse weather conditions were involved, or that any warning was ever given. The instruction should have been limited to the factual issues of the action. This same admonition is likewise applicable to instructions 9 and 10, which are quotations of I.C. § 49–701(a) and 49–701(b) respectively. Factual situations are mentioned in these instructions not in question here, i. e., the speed requirements for approaching and crossing railroad crossings, curves, hill crests, and narrow or winding roadways or other special hazards; and it also had references to applicable speed limits in urban areas and at night time. The giving of such instructions could serve only to confuse the jury.

Instructing the jury that the happening of an accident raises no legal inference of negligence, as set out in instruction No. 12 is also assigned as error. There is no merit to this claim; the court properly

**566**

instructed the jury on the burden of proof to be sustained by each of the parties, and the giving of this instruction cannot be claimed as prejudicial, the use of the term "negligence" in the instruction being as applicable to the claimed contributory negligence of appellant as to the asserted negligence of the respondent.

The court rejected certain offered testimony of Dr. Hawkes, a physician and surgeon, and the first attending physician of the plaintiff. The rejected testimony in the form of an opinion pertained to his knowledge of "pulmonary embolism", and its cause and its effect, on an individual.

No question was raised as to Dr. Hawkes' qualifications. The offered testimony dealt with matters within the customary field of his experience, and the general rule is that a physician and surgeon can state facts generally known to members of his profession. 32 C.J.S. Evidence § 480, p. 133; 2 Wigmore on Evidence, Third Ed. 665, § 569; 2 Jones on Evidence, Fourth Ed. 708, § 378.

Judgment is reversed, and the cause remanded for new trial.

Costs to appellant.

SMITH, C. J., and TAYLOR, KNUDSON and McQUADE, JJ., concur.