418 P.2d 562

Ronald J. NICHOLS and Nelma Nichols, his wife, Plaintiffs-Respondents,

v.

Robert G. SONNEMAN, Defendant-Appellant.

No. 9701

Supreme Court of Idaho.

Sept. 30, 1966.

Ferebauer & Barnard, Idaho Falls, for appellant.

Petersen, Moss & Olsen, Idaho Falls, James A. McIntosh, Salt Lake City, Utah, for respondents.

TAYLOR, Justice.

On the evening of December 7, 1963, plaintiff Nichols (respondent), in his capacity as a policeman for the city of Idaho Falls, was engaged in the investigation of an automobile accident which had occurred at the intersection of Yellowstone avenue and 17th street in Idaho Falls. While so engaged he was struck and injured by an automobile driven by defendant (appellant). Nichols and his wife brought this action to recover damages for the injuries sustained, alleging negligence on the part of defendant. Defendant denied negligence and alleged that the injuries arose out of negligence on the part of plaintiff. Trial resulted in verdict and judgment in favor of plaintiffs, from which defendant prosecuted this appeal.

Yellowstone avenue runs approximately north and south adjacent to and on the west side of the Union Pacific Railroad right of way. At the point involved the railroad tracks are located on an elevated embankment. Seventeenth street enters Yellowstone avenue from the east and passes through the embankment beneath the railroad tracks.

Plaintiffs' exhibit 7 is a picture of the scene where the accident occurred:

A stop sign was located a few feet west of the underpass abutment. This sign, facing east, required westbound traffic on 17th street to stop before entering Yellowstone avenue. Officer Nichols, assisted by one of the participants in the prior accident, was engaged in making measurements at the scene. At that time defendant, driving his car, entered Yellowstone avenue from the east on 17th street, turning north on the avenue. Officer Nichols was in the traffic lane, about six feet from its edge, and was just rising from a kneeling or squatting position, with his back toward the underpass, when defendant's car struck him.

Defendant Sonneman was the owner and operator of a bar in Idaho Falls. At about the time Nichols began his investigation at the intersection, defendant drove past the scene. He drove south on Yellowstone avenue and east through the underpass on 17th street to the liquor store located immediately east of the underpass. There he purchased liquor for his bar, and then proceeded west on 17th street and was turning north on Yellowstone avenue when the accident occurred. He testified that when he passed the scene on the way to the liquor store, he observed the officer's car and the two vehicles, which had been involved in the prior accident, parked off the east side of the avenue near the underpass; that on his return he stopped at the stop sign on the west side of the underpass; that he looked to the right and to the left; that he then put his car in motion and looked straight ahead while making the right-hand turn toward the north on Yellowstone avenue; that he did not see officer Nichols and was unaware of his presence until after the impact; that "a light thud hit the side of my car, right side"; that he stopped the car immediately and got out.

Nichols testified that the revolving blinker light on the top of his patrol car was not in operation at the time of the accident; that he was provided with a flashlight, and a fluorescent jacket to be worn over his uniform, but that he was not using the flashlight nor wearing the jacket while making the investigation at the time of the accident.

Plaintiffs' complaint contained three counts. The first count alleged damage for the personal injuries to Mr. Nichols in the sum of $1,305.70 for medical and hospital bills and loss of wages, and general damages for pain, suffering, inconvenience, and permanent disability in the sum of $30,000.00. The second count alleged that defendant's conduct was willful and wanton, and sought punitive damages in the sum of $10,000.00. The third count alleged damage to Mrs. Nichols in loss of consortium in the sum of $10,000.00, and loss of earnings in the sum of $200.00. The jury returned two verdicts: one in favor of Mrs. Nichols, assessing her damages at $1,200.00; and one in favor of officer Nichols, assessing his damages at $19,-305.70.

Judgment was entered for plaintiffs and against defendant for the amounts returned by the jury. After a hearing on defendant's motion to set aside the verdict and judgment, and for judgment in favor of the defendant, or in the alternative to set aside the verdict and judgment and grant a new trial, the court denied the motion to set aside the verdict and for judgment in favor of defendant, and:

"Ordered that the defendant's motion for a new trial is granted on the grounds that the damages awarded by the jury herein are excessive, in that the evidence was insufficient to support the verdict, and unless within fifteen days after service on plaintiffs' attorney of a copy of this order, the plaintiffs file with the clerk of the court a written consent to reduce the verdict to $8,500.00 in favor of plaintiff Ronald J. Nichols and $1,200.00 in favor of Nelma Nichols, in which event the motion for a new trial is in all respects denied."

Thereafter, plaintiffs filed their consent to reduction of the verdict in favor of officer Nichols to $8,500.00. Defendant brought this appeal from the judgment as thus modified and from the order denying his motion for judgment notwithstanding the verdict, or for a new trial.

By his assignments of error defendant raises the issues of lack of evidence to establish negligence on his part, and that the evidence shows contributory negligence on the part of officer Nichols as a matter of law. As to the first, the evidence shows that although the accident occurred on December 7th, at 7:00 p. m., there was sufficient light at the scene to enable a driver in defendant's position to observe Nichols in the position occupied by him on the roadway. There was some light coming through the underpass from the east side of the

railroad.. There were four floodlights in the ceiling of the underpass, which appear in plaintiffs' exhibit 7, supra. Seventeenth street did not extend westward beyond Yellowstone avenue. There was a service station on the west side of the avenue directly opposite the underpass, illumination from which lighted up the scene of the accident. Several witnesses testified to the lighting, and that plaintiff was visible where he lay, after the impact, without the aid of headlights from an automobile. One witness, experienced in photography, testified it was light enough to enable him to take a picture without a flash attachment. Defendant testified there was nothing to impair his view at the time.

The point where plaintiff was struck was only 24 feet, two inches directly in front of the stop sign at the west side of the underpass. The jury was justified in concluding that if defendant stopped at the stop sign and made observations to the right, left and ahead, and his headlights were on, all as he testified, he would have seen plaintiff and avoided the accident. Also, there was evidence that defendant had been drinking alcoholic beverages. One officer, the first at the scene, testified defendant was drunk. Two other officers who arrived later testified that in their opinion he was not intoxicated. The record admittedly shows that defendant's companion, who was riding with him at the time, was intoxicated. There was also evidence that defendant's windshield was slightly fogged. It was the jury's function to determine from all the evidence whether defendant was inattentive because of the effects of alcohol, or the presence of an intoxicated companion, or because of the foggy windshield, or for some other reason within his control, he failed to see plaintiff in time to avoid striking him.

In Drury v. Palmer, 84 Idaho 558, 375 P.2d 125 (1962) we said:

"It is not only the duty of the operator to look, but it is his duty to see and be cognizant of that which is plainly visible or obviously apparent, and a failure on his part in this regard, without proper justification or reason, makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care. 60 C.J.S. Motor Vehicles § 284, p. 661; 5A Am. Jur. 392, Automobiles and Highway Traffic § 265." 84 Idaho at 564, 375 P.2d at 128.

"He must look in such prudent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others would have seen under like circumstances. 60 C.J.S. Motor Vehicles § 284c, p. 667; 5a Am.Jur. 678 and 685, Automobiles and Highway Traffic § 705, § 712; Shelton v. Detamore, 198 Va. 220, 93 S.E.2d 314; Kerns v. Lewis, 246 Mich. 423, 224 N.W. 647; Barajas v. Parker, 165 Neb. 444, 85 N.W. 2d 894." 84 Idaho at 562, 375 P.2d at 127.'

Anent defendant's contention that plaintiff was contributorily negligent as a matter of law, the record establishes that plaintiff's presence upon the street was required by the duties of his office as a city policeman. The measurements he was taking were for the purpose of fixing the location of the point of impact in the prior collision. This he was required to do. Surrounding conditions were such that it became reasonably necessary for plaintiff to go to the point on the highway where he was struck, in order to locate by measurement the point of impact sought. While so doing it was his duty to exercise reasonable care for his own safety. However, his position is not to be compared to that of a pedestrian jay-walking or loitering on the street.

"* * * His situation is analogous to that of the workman on the highway. He is not charged with the duty of constantly looking for traffic while engaged in work which requires his presence there, and failure so to do does not constitute contributory negligence as a matter of law, nor does it spell assumption of risk of injury caused by others." McAllister

v. Cummings, 191 Cal.App.2d 1, 12 Cal. Rptr. 418, at 423.

" 'The laborer is entitled to keep his mind on his work, and it is not negligence as a matter of law for him to fail to continually look and listen for approaching vehicles. Such a workman can rely, to some extent, at least, on the assumption that the driver of a motor vehicle will exercise some care to avoid hitting him. Under this rule, a workman in the street may assume that motorists will keep a proper lookout, maintain reasonable control and observe and obey the rules of the road. Thus one working on a roadway or approach to a bridge, not moving about, or a street sweeper, is not negligent merely because he becomes engrossed in his work and fails to look for approaching vehicles.

" 'It is particularly true that a police or traffic officer on duty is not required to use the same degree of care in looking out for approaching vehicles as an ordinary pedestrian. A policeman is not required to anticipate that a motorist will violate traffic regulations, thereby resulting in injury to him.' " Id., 12 Cal.Rptr. at 424, 2A Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, § 1577, p. 519.

Kellogg v. Thomas, 244 N.C. 722, 94 S.E. 2d 903 (1956). See Gathings v. Sehorn, 255 N.C. 503, 121 S.E.2d 873 (1961) applying the general rule to policemen specifically.

Police officer Havemann, who investigated the accident here involved, made similar measurements from the same place on the highway as those made by plaintiff. He testified that he did not send anyone through the underpass to control traffic coming from the east on 17th street, while he was so engaged; that he relied upon the presence of the stop sign on the west side of the underpass as sufficient protection against cars coming from that direction. The jury was entitled to consider the presence of the stop sign in determining whether plaintiff had exercised reasonable care for his own safety. It is true, as defendant contends, that plaintiff could have exercised greater care by using the flashlight and the fluorescent jacket, or by posting another to control traffic. It is nonetheless true that the jury found that plaintiff was not contributorily negligent, and that finding is supported by substantial, competent evidence. Thus, our further consideration of the issue is concluded by the jury's finding. The evidence also supports the jury's finding against defendant on the defense of assumption of risk.

The care required to be exercised by plaintiff while on duty in the street was correctly stated to the jury in instruction number 15.[1]

Defendant contends the trial court erred in conditioning its order granting his motion for a new trial upon plaintiffs' failure to remit the excess damages awarded by the verdict. It is defendant's

---

1. "You are instructed that at the time and place in question the plaintiff, Ronald J. Nichols, was a policeman engaged in his official capacity as such in working upon a highway in the process of investigating an accident, and that as such, his conduct must be judged by a more liberal standard than an ordinary pedestrian in that such an officer is not required to use the same degree of care in looking for approaching vehicles as an ordinary pedestrian, and he is entitled to assume that an oncoming motorist will observe him and avoid running him down without warning. He may assume that motorists will use reasonable care for the safety of those working in the street proportionate to the danger of the situation. He is not required to keep a constant lookout for approaching motorists, but he has the duty to use reasonable care under the circumstances to avoid being run over; that is, such care and caution as are dictated by the exigencies of the particular situation, and that might be expected of an officer engaged in similar duties. In short, he has the duty of exercising such care as a reasonably prudent or careful person would exercise under the same circumstances."

position that the verdict was so excessive as to indicate it was the result of passion or prejudice on the part of the jury. The trial judge did not find that the verdict was rendered under the influence of passion or prejudice, but only that it was excessive "in that the evidence was insufficient to support the verdict." (See order, supra). Where "it does not appear to the trial judge that the amount was influenced by passion or prejudice, or other irregularity which may be avoided on a new trial," then the trial judge may "condition the new trial on a refusal of the prevailing party to remit that part of the verdict which in his judgment is excessive." Checketts v. Bowman, 70 Idaho 463, at 467, 220 P.2d 682, at 684 (1950). McCandless v. Kramer, 76 Idaho 516, 520, 286 P.2d 334 (1955); Mendanhall v. MacGregor Triangle Co., 83 Idaho 145, at 150, 358 P.2d 860 (1961). The court did not err in conditioning the new trial on remittitur of the excess in the verdict.

 Defendant also contends the verdict in favor of plaintiff Nelma Nichols was excessive, and that instruction 23 submitting to the jury her claim for loss of consortium was not supported by evidence and should not have been given. The verdict in her favor was for $1,200.00. She testified that she lost earnings in the amount of $200.00, as an Avon saleslady, during December, 1963, and January, 1964, because she was unable to carry on that work during the time her husband was in the hospital, and convalescing at home. She testified that he was unable to help around the home, or with the care of the children, as he had previously done, and that he was suffering pain, was cross and irritable, and required her help to get up and down, during that time. We find no error in this regard.

Defendant does not specifically question the right of the wife to recover damages for loss of consortium. As to that right, and also as to the elements or items to be considered in determining the amount of such damage, see: Hitaffer v. Argonne Co. (1950) 87 App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, cert. den. 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624, [overruled in Smither and Company, Inc. v. Coles (1957) 100 App.D.C. 68, 242 F.2d 220, on ground not applicable here]; Anno. 23 A.L.R.2d 1378; Duffy v. Lipsman-Fulkerson & Co., 200 F.Supp. 71, 74 (D.C.Mont.1961); Dutton v. Hightower and Lubrecht Construction Co., 214 F.Supp. 298 (D.C.Mont. 1963); A.L.R.2d Later Case Service Vol. 3, p. 615, et seq. (listing 14 jurisdictions recognizing the right); 41 C.J.S. Husband and Wife § 404, p. 900, note 96 pocket part; 27 Am.Jur., Husband and Wife, § 511 (husband's damages for loss of consortium). Particularly applicable here are the above federal cases applying the Montana law.

 The following instructions are also assigned as erroneous:

"No. 13. A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted; the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty. One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care."

Defendant contends this instruction assumes or infers that he was negligent or that he acted in violation of law. The trial court is required to instruct on all issues which are supported by evidence. Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964); Wurm v. Pulice, 82 Idaho 359, 353 P.2d 1071 (1960). The court in its instruction number 5 specifically warned the jurors that they should draw no inference of fact from the court's instructions.

Instruction number 13 was taken from 1 California Jury Instructions—Civil, #138, p. 334, and was approved by the California Supreme Court in Stickel v. San Diego Electric Ry. Co., 32 Cal.2d 157, 195 P.2d 416 (1948). The latter part of the instruction may be subject to the objection urged in that case, but that is not the point raised here.

"No. 16. You are instructed that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary."

See I.C. § 49-735. The portion of this instruction relating to sounding of the horn is criticised as requiring a driver to sound the horn whether he knew or should have known of the presence of a pedestrian. Plaintiffs contended that since defendant observed the police car on his way to the liquor store, he should have anticipated the presence of the officer. However speculative this reasoning may be, we cannot say the instruction was erroneous.

"No. 17. The law of this state governing the operation of motor vehicles upon the highways, as far as applicable to this case, is as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions of, and having regard to, the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and it is the duty of all persons to use due care.

"The driver of every vehicle shall, consistent with the requirements hereof, drive at an appropriate reduced speed when going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by

reason of weather or highway conditions."

This instruction contains the substance of portions of I.C. § 49-701. Defendant contends the instruction was not applicable because there was no evidence of excessive speed on the part of defendant and that it tended to give the jury the impression that a driver going around a curve must reduce his speed irrespective of his speed at the time of entering the curve. We find no error in the instruction on the grounds urged. There was evidence from which the jury may have drawn an inference that defendant did not stop at the stop sign, and that his speed in rounding the curve was excessive, having regard to the actual and potential hazards and surrounding circumstances then existing.

Number 18 advised the jury that it is unlawful for any person who is under the influence of intoxicating liquor to drive or be in control of any vehicle, as provided by I.C. § 49-1102(a). This instruction was not erroneous in view of the conflicting evidence as to whether defendant was at the time under the influence of intoxicating liquor.

"No. 19. You are instructed that violation of the driving laws of this State constitutes negligence unless such violation takes place under circumstances wherein the conduct was excusable, justifiable, or such as might reasonably have been expected from a person of ordinary prudence."

This was a correct instruction. See Drury v. Palmer, 84 Idaho 558, at 563, 375 P.2d 125 (1962). There was evidence, though conflicting, from which the jury could have found that defendant was acting in violation of some driving law of the state, such as set out in instruction 17.

By its instruction number 26 the court submitted to the jury the issue of punitive damages. The law governing the allowance of such damages was correctly stated in the instruction. We find the evi-

dence insufficient to support a verdict for punitive damages. The instruction should not have been given. However, we do not regard the instruction as reversibly erroneous for the reason that the evidence amply supports the verdict and judgment for plaintiff Ronald Nichols in the amount of $8,500.00, so that if the jury did include in its original verdict of $19,305.70, any amount as punitive damages, such allowance was eliminated by the action of the court, and the remittitur by plaintiffs, reducing the verdict and judgment to $8,500.00.

Judgment affirmed.

Costs to respondents.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.