620 P.2d 1096

Jerry ROBINSON, Jr., a minor, by and through his next friend, Jerry Robinson and Doris Robinson, husband and wife, Plaintiffs–Appellants,

v.

Gary Lee WESTOVER and Mary Lou Westover, Defendants–Respondents.

No. 13211.

Supreme Court of Idaho.

Nov. 12, 1980.

Rehearing Denied Dec. 30, 1980.

R. C. Stone of Parsons, Smith & Stone, Burley, for plaintiffs–appellants.

Bert Larson of Parry, Robertson, Daly & Larson, Twin Falls, T. H. Church of Church, Church, Snow & Tuft, Burley, for defendants–respondents.

McFADDEN, Justice.

This is an appeal by plaintiff–appellant Jerry Robinson, Jr., acting by and through his parents, from the granting of defendants–respondents' Gary Lee Westover and Mary Lou Westover's motion for summary judgment.

On June 18, 1977, at approximately 5:30 p. m.[1] an accident occurred on Idaho State Highway 27, approximately five miles north of Oakley, Idaho. Plaintiff–appellant Jerry Robinson, Jr. (Jerry), a seven year old child, was on a motorcycle when he was struck by a Ford Pinto station wagon owned by the

1. There seems to be some dispute as to the exact time of the accident. In Gary Westover's deposition the time is approximated at 2:30 p. m. However, in Mary Lou Westover's deposition counsel stated that "the report shows it happened around 5:30 . . . ."

respondents and operated by Gary Westover. It is undisputed that the weather was fair and visibility was good and that there was no obvious obstruction to vision. The two lane highway was in good condition. It is also undisputed that at the moment of impact Westover was operating the vehicle at approximately 55 miles per hour in a zone posted for that speed.

Immediately prior to the accident Jerry had been riding his motorcycle while accompanied by his uncle, Rick Robinson, a fourteen year old high school freshman who was riding his own motorcycle. Rick crossed Highway 27 from the private road on which he had been riding to a private driveway belonging to his parents on the other side of the highway. After Rick crossed the highway to the east side, he stopped his own motorcycle and observed Jerry stopping his own Kawasaki motorcycle on the west side of the highway with his front wheel located upon the asphalt but behind the white fog line located at the west side of the highway surface, waiting for traffic to pass. Rick signalled for Jerry to cross the highway, but Jerry stayed where he was. Following this refusal, Rick turned his attention to the approaching traffic and saw the vehicle driven by Gary Westover. He was observing this vehicle at the time of impact and did not continue to observe the location of Jerry. Rick and Gary Westover were well acquainted, as Westover had been Rick's teacher throughout junior high school. Westover was also looking toward Rick up until the time of the accident. Rick was stationed on the left side of the highway and apparently waving at the Westover vehicle. There were no skid marks nor evidence of any evasive action by the Westover vehicle. Jerry suffered grievous injuries as a result of the accident and is currently a paraplegic.

There is some question whether Gary Westover saw Jerry before the impact. In his deposition Westover stated:

"It would be hard to estimate, but at a very close distance, the motorcycle pulled out in front of my car.

" . . . .

"I saw him about the time that—where he was almost directly in front of the car because my eyes were turning back from the left from where Rick was and the Robinson house was and he was coming on from this side, and then I hit him."

The depositions reveal that neither the station wagon nor the motorcycle, had any mechanical defects.

Following the taking of depositions of Jerry Robinson, Jr., Jerry Robinson, Sr., Doris Robinson, Gary Lee Westover, Mary Lou Westover, and Rick Robinson, the respondents moved for summary judgment. The district court granted the motion, stating in part

"The undisputed material facts indicate that there was no obstruction to the vision of the minor plaintiff, that he was able to observe vehicular travel over the highway in question, that he had not crossed the highway at the invitation of his uncle, who was on a motorcycle directly across the road from the minor plaintiff, that he observed, or should have observed the approaching Westover vehicle and remained in his place of safety until he could safely cross the highway. Defendants motion for summary judgment will be granted upon the ground that the negligence of the minor plaintiff was as great or greater than the negligence of the defendant. Plaintiff's complaint will be dismissed with prejudice."

The essential issue on appeal is whether the trial court erred in granting respondent's motion for summary judgment. We hold that the court erred in this respect and reverse the court's order.

■ Summary judgment can be granted only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(b)(c). Upon motion for summary judgment all doubts are to be resolved against the moving party. I.R.C.P. 56(c); *Crane v. Banner*, 93 Idaho 69, 72, 455 P.2d 313, 315, 316–17 (1969); *Salmon Rivers Sportman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 353, 544 P.2d 306, 307, 311 (1975). Except in the quite rare situation

in which reasonable minds could not reach different conclusions on the issue, issues of proximate cause like negligence and contributory negligence are issues for the jury to resolve. *Crane v. Banner*, 93 Idaho at 73, 455 P.2d at 319 (1969); *Hayward v. Yost*, 72 Idaho 415, 422, 242 P.2d 971, 975 (1952).

▪ The above cited cases were decided under the doctrine of contributory negligence. In 1971, Idaho enacted comparative negligence statutes. I.C. § 6–801 (1971 Sess. L. ch. 186 § 1, p. 863). The difficulty in applying summary judgment in an action premised on negligence resulting from the necessity of balancing rights, duties, and conduct are further exacerbated when comparative negligence concepts are considered. Now the question is not just whether the appellant was guilty of contributory negligence but whether as a matter of law his contributory negligence was equal to or greater than the negligence of the other party. This test must be met before summary judgment can be granted. *See Davis v. Bushnell*, 93 Idaho 528, 465 P.2d 652 (1969).

▪ The instant case does present facts from which an inference of negligence could be legitimately drawn regarding Westover's conduct. It is well settled that "a person operating a motor vehicle has a duty to keep a proper lookout." *Domingo v. Phillips*, 87 Idaho 55, 390 P.2d 297 (1964). In *Drury v. Palmer*, 84 Idaho 558, 375 P.2d 125 (1962), the court described the scope of that duty as follows:

"Appellant was under the duty to maintain a lookout for other vehicles approaching the intersection. The duty is not merely of looking, but is one of observation, imposing upon a motorist the necessity of being observant as to the traffic and general situation at or in the vicinity of the intersection. He must look in such prudent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for safety of himself and others would have seen under like circumstances." 84 Idaho at 562, 375 P.2d at 127.

"It is not only the duty of the operator to look, but it is his duty to see and be cognizant of that which is plainly visible or obviously apparent, and the failure on his part in this regard, without proper justification or reason, makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care." (Citations omitted) 84 Idaho at 564, 375 P.2d at 128.

In *Potter v. Mulberry*, 100 Idaho 429, 599 P.2d 1000 (1979), this court quoting from *Coughran v. Hickox*, 82 Idaho 18, 348 P.2d 724 (1960), held that if a motor vehicle–an automobile–is stopped prior to entry onto a through highway and is seen by the driver of a vehicle lawfully approaching, the approaching driver is entitled to assume that the stopped vehicle will yield the right of way. 100 Idaho at 431, 599 P.2d at 1002. From this proposition the court reasoned that the actions of the approaching driver were not the proximate cause of the accident, since it arose from the stopped vehicle's entering the highway in front of the approaching driver's vehicle. The court concluded in *Mulberry* that the uncontradicted evidence disclosed that the approaching driver had maintained a proper lookout and had observed the stopped vehicle and therefore could properly rely upon the assumption that the stopped vehicle would yield the right of way. *Potter v. Mulberry, supra; Cochran v. Hickox, supra.* However, in the instant case, the evidence is not undisputed that the defendant, Westover, was maintaining a proper lookout as he approached the defendant's vehicle along the side of the road. Viewing the evidence most favorable to the plaintiff, as we must on summary judgment, the record discloses that even though the plaintiff was stopped on his motorcycle on the edge of the highway in plain view of oncoming traffic, nevertheless the defendant, Westover, in his deposition testified that he did not see the plaintiff until just an instant before the impact. That fact, together with the defendant Westover's testimony that he was looking at the plaintiff's uncle across the street and waving to him, would justify a jury's conclusion that the defendant West-

over was not maintaining a proper lookout for vehicles on, near, or entering the highway.

We conclude that, on the facts which were before the district court, reasonable minds might very well differ as to whether Westover failed to keep a proper lookout, and if so differ also as to the degree of his negligence, if any. It was established that Jerry was stopped with his motorcycle next to the highway surface for a period of time prior to the accident, and that there were no obstructions to Westover's vision as he approached the point where Jerry was stopped. Notwithstanding this fact, Westover stated that he did not observe Jerry until immediately before the impact.

In conclusion, the facts of this case do not present that rare situation where reasonable minds could not differ on an interpretation of the facts as claimed by the respective parties. The court therefore reverses the order for summary judgment and remands the case for further proceedings. Costs to appellant.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

In determining if the instant case presents one of those rare situations in which reasonable minds could not reach different conclusions, I believe the following additional details must be added to the majority's somewhat terse summary of the facts. When Jerry Robinson, Jr. was six years old, his parents gave him a motorcycle. After his father had instructed him as to its operations, he was permitted to ride it through fields, gravel pits, on private roads and on public roads and highways to visit his grandparents and friends. At the time of the accident in question here, he was riding a larger motorcycle which had been given to him by his parents approximately three weeks prior to the accident. At the time in question, he was accompanied by his twelve–thirteen year old uncle, who had also possessed and had been riding motorcycles since he was six years old.

Jerry Robinson, Jr., the seven year old victim of these tragic circumstances, has no recollection of the accident. His uncle–companion did not see the actual accident. The only other evidence offered in opposition to the motion for summary judgment was that of Jerry Robinson, Jr.'s father, mother, and his uncle–companion. Each stated that they knew nothing and had been told nothing which would indicate that the defendant–driver was in any way negligent in his operation of the Westover vehicle. Hence, my view of the record indicates that regardless of any negligence of Jerry Robinson or its quantum, there has been no showing of any negligence on the part of the defendant–driver, nor have any facts been asserted from which an inference of his negligence could be legitimately drawn.

I find it impossible to reconcile the instant case with this Court's recent decision in *Potter v. Mulberry*, 100 Idaho 429, 599 P.2d 1000 (1979). In *Mulberry*, the Potter vehicle was on a through highway approaching an intersection. The driver of the Potter vehicle testified only that she had seen the Mulberry vehicle stopped at the intersection awaiting vehicles to clear so that she might enter the through highway. Mulberry testified that she did not see the vehicle approaching on the through highway. I must disagree with the majority's characterization of what the Court "concluded" in *Mulberry, i. e.*, "that the uncontradicted evidence disclosed that the approaching driver had maintained a proper lookout." Nowhere do I find such language or such a conclusion in *Mulberry*. The only statement of the *Mulberry* Court is:

> "There is no evidence that Mrs. Potter was not observing traffic regulations as she proceeded down Jamestown Road. In fact, her uncontradicted testimony was that she was driving 5 to 10 miles per hour below the posted speed limit. There were no unusual weather or road conditions that would have necessitated driving at a slower speed. * * * Likewise, there is no evidence in this record which will sustain a jury finding of actions on the part of Mrs. Potter which could be considered as a proximate cause of the collision."

Although I, along with Donaldson, C. J., dissented in *Mulberry*, I am required to accept such as the present law of Idaho. When the instant case is placed beside *Mulberry*, it is my opinion that both cannot stand. One of the two is wrong, and I would prefer that *Mulberry* be overruled.

In the instant case, plaintiffs are entitled to the benefit of the most preferential view of the facts and inferences arising therefrom. There are absolutely no "facts" which indicate any negligence on the part of the defendant–driver in the instant case. Although the driver of the vehicle on the through highway, just as in *Mulberry*, was entitled to rely upon a statute, I.C. § 49–730 [now codified as I.C. § 49–644] which required the plaintiff to yield the right–of–way to all persons approaching on the through highway, nevertheless there may be some slight inference arising from the facts that the driver of the oncoming vehicle failed to keep a proper lookout, since he might have been able to swerve and to avoid or at least slow down to avoid the more serious resulting consequences if he was keeping a proper lookout when the young boy on the motorcycle darted into his path.

If such be the rationale of the majority, then such is at clear odds with the comparable situation in *Mulberry* wherein the Court stated its ironclad rule of law that the driver on the through highway was entitled to assume that the entering vehicle would obey the statute and hence the driver of the vehicle on the through highway could not have been, as a matter of law, the proximate cause of the accident.

In *Mulberry*, the benefit of the factual view and the presumptions arising therefrom were identical to the case at bar. In *Mulberry*, the cause had been tried, the jury had returned a verdict for plaintiff, however attributing 40% of the negligence to the plaintiff. Plaintiff moved for a judgment n. o. v., contending plaintiff was guilty of no causative negligence, which motion was denied. This Court reversed. It is axiomatic that upon appeal all facts and the most favorable inferences arising

therefrom must be construed in support of a jury verdict.

As aforesaid, I would either follow the dictates of *Mulberry* and affirm the summary judgment in favor of defendants or, in the alternative, overrule *Mulberry* and reverse the summary judgment.

DONALDSON, C. J., concurs.

## ON DENIAL OF REHEARING

BISTLINE, Justice.

Defendants in their petition for rehearing assign as error in the Court's opinion the failure "to consider, because defendant owes no duty to plaintiff, defendant's conduct as a matter of law cannot be the proximate cause of the accident." In a supporting brief defendants argue: "Whether defendant Westover did or did not see plaintiff Robinson prior to the accident has no bearing on the question of proximate cause in the instant matter. Westover owes no duty to Robinson." Defendants in their first brief filed herein, after pointing out that "it is undisputed and admitted by defendants that their vehicle did not leave any skid marks on the surface of the road," then urged· upon us "that there is absolutely no evidence in the record of any negligence on the part of Gary Lee Westover." The court below, however, did not agree with that contention, but rather attempted to compare the negligence of the boy against that of the defendant, Westover. I, too, am unable to agree with that contention, and where the defendants continue to insist that Westover as a matter of law is chargeable with no causative negligence, I will briefly state my own views on this record.

The record is clear that Jerry did not precipitately follow Rick across the highway, but rather that Jerry perhaps in an exercise of caution refrained from crossing until and after passage of traffic other than the Westover vehicle. The boy and his motorbike were at this time on the highway, but behind the white fog line. It is beyond dispute that the boy and his bike were

clearly visible to Westover, and the Westover vehicle was clearly visible to the boy. The boy is unable to recall what happened. Westover does. He admits to not seeing the boy and the bike until he saw the boy move "into the path of his automobile when he was so close thereto as to avoid any collision with him." (From Westover brief.) Westover testified that he "had never seen him stopped at the side of the road. . . . I saw him an instance before I hit him, as he was pulling out to the road."

Yet, the fact of the matter is that the boy and his bike were there to be seen. Also to be seen, and *actually seen by Westover*, on the opposite side of the highway, was the other boy on his bike.

Just recently Justice Shepard, in *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 681 (1980), reaffirmed *Munson v. State Department of Highways*, 96 Idaho 529, 531 P.2d 1174 (1975), in its holding "that the driver of an automobile is held to have notice of that which is plainly visible on the highway before him." Of *Munson*, in distinguishing that case from the facts and circumstances attendant to *Gavica*, the Court's opinion stated that "*Munson* involved a clear danger, highly visible on the road before it was encountered." Cases are legion that it is negligence per se for a driver to fail to see that which is plainly there to be seen, *Drury v. Palmer*, cited in the Court's opinion being clear and to the point. In *Gayhart v. Schwabe*, 80 Idaho 354, 330 P.2d 327 (1958), the Court seemingly approves of that portion of an instruction set forth in n.1, p. 362, 330 P.2d 327, telling the jury that: "If you find from the evidence that before the collision Mrs. Schwabe saw or as a reasonably prudent person should have seen Kenneth Gayhart nearing and crossing Hawthorne Avenue, and if you further find that Mrs. Schwabe after seeing young Gayhart or after she should have seen him in the exercise of ordinary care, should have slowed down, turned aside, or stopped, and thereby have avoided the crash, and that Kenneth was injured by reason of Mrs. Schwabe's failure to do so, then you are instructed that you would be entitled to return a verdict for the plaintiffs, the Gayharts, unless . . . . ."

The legislature has recognized that children are entitled to special considerations of care: ". . . every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and *shall exercise proper precaution upon observing any child or confused* or incapacitated *person upon a roadway*." I.C. § 49–735, amended thereafter as I.C. § 49–724 to be effective July 1, 1977. A jury could find under the facts presented so far that Jerry Robinson, aged 7 years, was a confused person as well as the child which he obviously was. I.C. § 49–701, which became I.C. § 49–681, specifically requires reduced speed "when special hazards exist with respect to pedestrians or other traffic." A jury of reasonable men and women could find that Jerry Robinson was a special hazard then and there existing the not seeing of which was negligence on the part of Westover, and that had Westover seen that which was there to be seen he would have appropriately reduced his speed, as well as sounded his horn, and prepared himself for any required evasive action.

The law has long recognized that children are hazards on or near a highway. A prudent motorist, on observing one deer on or near a highway, or a cow or horse, for that matter, ought also to anticipate the presence of other such animals, and act accordingly. Surely within the bounds of reasonableness a motorist who sees one child and a motorbike on one side of a highway, ought to recognize that as a sign of warning producing some degree of increased vigilance as to what is directly before him on the other side. It takes little effort to remove a foot from a gas pedal; it costs little in time.

McFADDEN, J., concurs.