IRENE ALEXANDER, Plaintiff-Appellant, v. YELLOW CAB COMPANY *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—91—1750

Opinion filed January 29, 1993.

James P. Crawley and Phillip A. Doran, both of Balkin & Doran, Ltd., of Chicago, for appellant.

Howard T. Goffen, of Jesmer & Harris, of Chicago, for appellees.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Irene Alexander, appeals from an order of the circuit court granting summary judgment in favor of the defendants, Yellow Cab Company (Yellow Cab) and Donald Jones. The pertinent record consists of the depositions of the plaintiff, Donald Jones, who was driving a Yellow Cab that struck the plaintiff, and the depositions of Jones' two passengers. The plaintiff contends that questions of fact exist that bar summary judgment.

At 12:20 p.m., on August 11, 1988, the plaintiff, who was 68 years old at the time, was struck by a cab owned by Yellow Cab and driven by Donald Jones. The accident occurred on Michigan Avenue between Wacker Drive and South Water Street in Chicago. The plaintiff was on the east side of Michigan and started to walk to the west side. At the point where she started to walk, there were three lanes for northbound traffic. There was no painted crosswalk at the point from which she started to cross. (It was later conceded that the plaintiff was crossing "mid-block.") Cars were parked on the east side of Michigan. She started to cross from a point between two parked cars. There were three lanes between the parked cars and the center of the street. The traffic light at Wacker was red for northbound traffic. Traffic was stopped in the first two lanes, but there were no cars in the third lane, which was the lane closest to the center line of the street. As she was crossing the street, she walked between the cars that were stopped at the Wacker light in the first two lanes.

The plaintiff testified that she had one foot into the third lane when she looked to her left in the direction of South Water Street, which was the street south of Wacker. She saw the Yellow Cab two car lengths to the south, about 35 to 40 feet away. She estimated the speed of the cab at 25 miles per hour and that one to two seconds elapsed before she was struck. She did not hear the sound of a horn.

Donald Jones testified that he was driving his cab west on South Water Street; he had two passengers. It was a "beautiful, sunshiny day." He made a right-hand turn into the lane closest to the center

line on Michigan Avenue. Traffic was very congested. When he pulled into the lane, he came to a stop because traffic in that lane was backed up from the red light at Wacker. Traffic began to move in his lane. He did not see the plaintiff before his vehicle struck her. He estimated that at the time his vehicle struck the plaintiff, he was going between 5 and 10 miles per hour. At the time the impact occurred, the light for northbound traffic on Michigan Avenue was green.

He heard the passengers say, "Oh, my God," before the impact. The passengers' sudden utterance called his attention "to the presence of [the plaintiff]." There was a cab in the lane to his right which was stopped. The plaintiff was behind the stopped cab. He did not sound his horn before the impact.

Marsha Lloyd was one of the passengers in the cab. She testified that, as Jones turned onto Michigan Avenue, there were no cars traveling immediately in front of them. Traffic was clear up to the point where the collision with the plaintiff took place. There were cars in the two lanes to the east. The driver did not stop before the impact. He was traveling about 10 to 15 miles per hour. Lloyd estimated that she saw the plaintiff two or three seconds before the impact. The plaintiff was walking in a westerly direction. She was crossing between two stopped vehicles. The plaintiff was already in the cab's lane when Lloyd saw her. The driver sounded his horn and swerved to the left.

■■ Section 2—1116 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116) provides that a plaintiff in an action for bodily injury based on negligence "shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage." The trial judge held that the evidence established as a matter of law that the plaintiff's negligence was more than 50% of the proximate cause of her injury.

The defendants cite several cases for the proposition that contributory negligence may be established as a matter of law. But those cases were decided under the law that *any* contributory negligence which was a proximate cause of the injury barred *any* recovery. We judge that the defendants have established, indeed the plaintiff concedes, that the plaintiff was guilty of some contributory negligence that proximately caused her injury. The issue before us, however, is whether the evidence establishes as a matter of law that the plaintiff was guilty of more than 50% of the negligence that caused her injury.

The defendants have cited one Illinois case and two cases from other jurisdictions which involve the question of whether the degree

of contributory negligence may be decided as a matter of law. (See *West v. Kirkham* (1991), 207 Ill. App. 3d 954, 556 N.E.2d 523; *Lyons v. Nasby* (Colo. 1989), 770 P.2d 1250; *Robinson v. Westover* (1980), 101 Idaho 766, 620 P.2d 1096.) None of those cases supports the defendants' position. In *West v. Kirkham*, the trial judge granted summary judgment to the defendant on the ground that the plaintiff's contributory negligence exceeded 50%. The appellate court reversed the summary judgment order, holding that the evidence failed to establish as a matter of law *any* contributory negligence on the part of the plaintiff. The defendants had argued that a trial court may properly determine the degree of contributory negligence. The appellate court refrained from "deciding the issue." *West*, 207 Ill. App. 3d at 960.

In *Lyons v. Nasby*, the trial judge dismissed a complaint brought against a tavern owner for wrongful death. The tavern owner had served the decedent, who was intoxicated and was later killed when he drove off a mountain road. The appellate court affirmed on the ground that a tavern owner owed no duty to an inebriate. The supreme court of Colorado reversed the trial court and the appellate court and for the first time held that tavern owners' liability was not restricted only to claims brought by persons injured by an inebriate, but extended also to claims by the inebriate himself. The court added that any claim for injury to an inebriate would be tested under common law tort principles and the statutory law of comparative negligence. The court made this observation:

> "We also note that the degree of the parties' fault here is to be determined by the trier of fact. Only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference should relative degrees of fault be determined as a matter of law. [Citation.] Absent this degree of clarity, the issue of comparative negligence should be submitted to the jury." *Lyons*, 770 P.2d at 1259-60.

In *Robinson v. Westover*, the plaintiff, a seven-year-old boy, was standing next to his motorcycle on the side of a road. His 14-year-old cousin, who knew the defendant, was standing on the other side of the road. The cousin saw that the plaintiff had the front wheel of his motorcycle located on the asphalt of the highway but behind a white fog line on the side of the highway surface. The cousin signaled the plaintiff to cross the highway, but the plaintiff stayed where he was. The cousin turned his attention to the approaching traffic and saw the vehicle driven by the defendant. The cousin was observing the defendant's vehicle at the time the vehicle struck the plaintiff.

There was some question whether the defendant saw the plaintiff before the impact. He testified that "at a very close distance, the motorcycle pulled out in front of my car. *** I saw him about the time that—where he was almost directly in front of the car because my eyes were turning back from the left from where [his cousin] was and the [plaintiff's] house was and he was coming on from this side, and then I hit him." *Robinson*, 101 Idaho at 767, 620 P.2d at 1097.

The supreme court of Idaho reversed summary judgment in favor of the defendant:

> "We conclude that, on the facts which were before the district court, reasonable minds might very well differ as to whether [the defendant] failed to keep a proper lookout, and if so differ also as to the degree of his negligence, if any. It was established that [the plaintiff] was stopped with his motorcycle next to the highway surface for a period of time prior to the accident, and that there were no obstructions to [the defendant's] vision as he approached the point where [the plaintiff] was stopped. Notwithstanding this fact, [the defendant] stated that he did not observe [the plaintiff] until immediately before the impact." *Robinson*, 101 Idaho at 769, 620 P.2d at 1099.

Like the appellate court in *West v. Kirkham*, we need not and do not say that a court may never determine as a matter of law that a plaintiff's negligence was more than 50%. But we do say that the facts of this case are insufficient to support such a determination. The plaintiff testified that she first saw the cab about 35 to 40 feet away. She estimated the speed of the cab at 25 miles per hour and that one or two seconds elapsed before she was struck.

Marsha Lloyd estimated that she saw the plaintiff two or three seconds before the impact. Jones testified that he did not see the plaintiff before his vehicle struck her. It was the passengers' outburst, "Oh, my God," that called his attention "to the presence of" the plaintiff. A fact finder could reasonably infer that Jones did not see the plaintiff when his passengers did; that he would have seen the plaintiff at the same time his passengers did, if he had kept a proper lookout; and that, if he had seen the plaintiff when his passengers did, he could have avoided striking the plaintiff.

■ There is one important contradiction between the testimony of Jones and Lloyd. Jones testified that he had to stop after he turned onto Michigan Avenue because the traffic in the third lane was backed up from the light at Wacker. Lloyd said there was no traffic in the third lane when Jones turned onto Michigan. Lloyd also contradicted Jones' testimony when she said that Jones sounded his horn. Consid-

ering, as we must, the evidence in the light most favorable to the plaintiff, we judge that the degree of the negligence of the parties would be properly left to a fact finder and that summary judgment should not have been entered in favor of the defendants.

■ The defendants also maintain that they owed no duty to the plaintiff. We disagree. Anyone driving a motor vehicle anywhere has a duty to maintain a proper lookout for pedestrians, other vehicles or any other obstacle in the vehicle's path. The main thrust of the defendants' argument is that the defendant did not have a duty to anticipate the plaintiff's negligence and cites *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. That case involved the duty of the owners of land to persons who come upon the land. The supreme court reversed an order granting a defendant judgment notwithstanding a jury verdict in favor of a plaintiff injured on the defendant's premises. The court added this observation:

> "This is not to say that the defendant must anticipate negligence on the part of the plaintiff. Generally, a party need not anticipate the negligence of others. [Citations.] The inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it. *If in fact the entrant was also guilty of negligence contributing to his injury, then that is a proper consideration under comparative negligence principles.*" (Emphasis added.) *Ward*, 136 Ill. 2d at 152.

To say that any person driving a vehicle on a summer day in downtown Chicago has no reason to anticipate that pedestrians will cross a street outside a crosswalk is to ignore reality.

For these reasons, we judge that summary judgment was improperly granted to the defendants. The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

RAKOWSKI and GIANNIS,* JJ., concur.

---

*Justice Rosemary La Porta participated in oral argument before her death. Justice Gus Giannis was substituted on the panel. He has listened to the oral argument tape and has read the briefs.