GERALD H. TRAPHAGAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF KATHY JO TRAPHAGAN, DECEASED, APPELLEE AND CROSS-APPELLANT, v. MID-AMERICA TRAFFIC MARKING, AN IOWA CORPORATION, APPELLANT AND CROSS-APPELLEE.

555 N.W.2d 778

Filed November 22, 1996.    No. S-94-1032.

Leland K. Kovarik, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellant.

Patrick M. Connealy and Laurice M. Margheim for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Kathy Jo Traphagan was killed when the car she was driving struck the rear of a Mid-America Traffic Marking (Mid-America) truck. The personal representative of Traphagan's estate sued Mid-America. The trial court overruled Mid-America's motion for directed verdict; however, the court held that Traphagan was contributorily negligent as a matter of law in violating Nebraska's "range of vision" rule. The court submitted the issue of Mid-America's negligence to the jury. The jury found that the accident was caused 75 percent by Mid-America's negligence and 25 percent by Traphagan's negligence, and the court entered a judgment against Mid-America in the amount of $750,000. Mid-America appealed, and the personal representative filed a cross-appeal. We affirm the judgment of $750,000 and dismiss the cross-appeal.

## SCOPE OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *New Light Co. v. Wells Fargo*

*Alarm Servs.*, 247 Neb. 57, 525 N.W.2d 25 (1994); *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996).

## FACTS

Western Engineering was the primary contractor with the State of Nebraska under a contract to lay new asphalt on U.S. Highway 20. Mid-America had been contracted by Western Engineering to apply and maintain temporary pavement markings during the construction process. On September 21, 1992, at approximately 5 p.m., Traphagan was traveling east in a Pontiac on Highway 20 when she collided with the right rear of a 1-ton truck owned and operated by Mid-America.

At the time of the collision, the Mid-America truck was stopped in the middle of the eastbound lane of Highway 20, which was newly resurfaced. Members of the crew were in the process of removing centerline tape which consisted of a series of 2-foot long strips. As the truck stopped, the crew used a torch attached to the truck to heat a strip and then scrape it off. Once one strip was removed, the Mid-America truck would move 4 feet to the next strip.

Prior to the accident, Traphagan was driving east on Highway 20 at approximately 55 m.p.h. The collision occurred approximately 430 feet from the crest of a hill. An orange sign stating "Road Construction Next 11 Miles" was located 7½ miles from the scene of the accident, but there were no other advance warning signs, orange cones, or flaggers warning that a stopped vehicle was blocking the lane ahead. Testimony adduced at trial indicated that Mid-America's employees were not wearing the orange vests required for road work. There was conflicting evidence as to whether the hazard lights on the Mid-America truck were flashing. The Mid-America truck was

equipped with a flashing amber beacon on the top of its cab, and the evidence indicates that the beacon was on at the time of the accident. There were no other flags or signs that highlighted the truck's presence.

Traphagan's Pontiac struck the right rear corner of the truck in such a manner that the left corner pillar of the Pontiac was severed and the top was torn off the car. Traphagan died as a result of this collision.

Traphagan's personal representative brought this action against Mid-America alleging, inter alia, that Mid-America was negligent in failing to properly warn of its presence blocking the eastbound lane, failing to properly train its employees in principles of safe traffic control, and failing to heed the express verbal warnings of other motorists regarding the danger that the Mid-America truck presented. The trial court directed a verdict that Traphagan was contributorily negligent as a matter of law, but allowed the jury to determine the percentage of Traphagan's negligence as compared to Mid-America's. The jury awarded damages of $1,000,000 and assigned 25 percent of the negligence to Traphagan and 75 percent to Mid-America. As a result, the court entered a judgment of $750,000 in favor of Traphagan.

## ASSIGNMENTS OF ERROR

Mid-America assigns five errors: The trial court erred (1) in failing to apply Nebraska's range of vision rule and in submitting the issue of Traphagan's negligence to the jury, (2) in failing to give Mid-America's requested instruction No. 7, (3) in giving instruction No. 10 and in failing to give Mid-America's requested instruction No. 3, (4) in giving instruction No. 13, and (5) in giving instruction No. 14.

The personal representative has cross-appealed, asserting that the trial court erred in submitting the issue of Traphagan's negligence to the jury and erred in finding Traphagan contributorily negligent.

## ANALYSIS

Mid-America argues that a directed verdict should have been granted against Traphagan because she was negligent as a matter of law in operating her vehicle at such a speed that she could

not stop within her range of vision and that Traphagan did not make a prima facie case with respect to Mid-America's negligence. The range of vision rule states that "a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision." *Nickell v. Russell*, 247 Neb. 112, 120-21, 525 N.W.2d 203, 208 (1995). Accord *Horst v. Johnson*, 237 Neb. 155, 465 N.W.2d 461 (1991).

Mid-America contends that the range of vision rule required the trial court to find as a matter of law that Traphagan's negligence equaled or exceeded Mid-America's negligence. Under the applicable contributory negligence standard, if the claimant's contributory negligence is equal to or greater than the total negligence of all persons against whom recovery is sought, the claimant shall be totally barred from recovery. See Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995).

The enactment of § 25-21,185.09 eliminated the prior slight-gross standard for causes of action for negligence. Under the prior slight-gross standard, found in Neb. Rev. Stat. § 25-21,185 (Reissue 1995), a plaintiff could recover only if his or her negligence was slight in comparison to the defendant's, which was gross. See *Krepcik v. Interstate Transit Lines*, 152 Neb. 39, 40 N.W.2d 252 (1949). In arguing that a directed verdict should have been granted in its favor, Mid-America relies solely on range of vision cases decided under the slight-gross standard.

We begin by noting that we have not held under the slight-gross standard that a violation of the range of vision rule bars the plaintiff's recovery as a matter of law in every circumstance. In *C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 748, 255 N.W.2d 272, 277 (1977), we stated:

The range of vision rule was never intended to be arbitrary. [Citations omitted.] Although in some circumstances it may be proper for the trial court to determine as a matter of law that a person violating the range of vision rule is guilty of negligence more than slight, so as to prevent recovery, such as where the other party was not negligent in any respect, yet we have never held that a driver violating that rule is guilty of negligence more than slight

in every circumstance, regardless of the actions or negligence of the person with whom he collides.

Neither have we, heretofore, addressed the relationship between case law finding the plaintiff guilty of negligence more than slight under the old standard and cases arising under the new comparative negligence statute, § 25-21,185.09. We now hold that such cases decided under the slight-gross standard are not dispositive of whether a plaintiff's contributory negligence bars recovery as a matter of law under the new standard.

Other jurisdictions that have addressed this issue have generally left the apportionment of negligence to the jury. In *McKinney v. Public Service Co.*, 597 N.E.2d 1001 (Ind. App. 1992), the court stated that although at some point, the apportionment of fault may become a question of law for the court, fault apportionment under the Indiana Comparative Fault Act was uniquely a question of fact for the jury. See, also, *T.M. Doyle Teaming Co., Inc. v. Freels*, 735 F. Supp. 777 (N.D. Ill. 1990). The court in *Bruno v. Biesecker*, 40 Wis. 2d 305, 162 N.W.2d 135 (1968), held that a driver's negligence in turning left in front of an automobile approaching from the opposite direction was not as a matter of law at least 50 percent of the total negligence. In so holding, the court reiterated that the apportionment of negligence was peculiarly within the province of the jury. See, also, *Wroblewski v. Exchange Insurance Ass'n of Chicago*, 273 F.2d 158 (7th Cir. 1959) (holding that although plaintiff was clearly negligent in some degree, under Wisconsin law, apportionment of negligence is almost always for jury). In *Alexander v. Yellow Cab Co.*, 241 Ill. App. 3d 1049, 609 N.E.2d 921 (1993), a pedestrian stepped out, midblock, from between two parked cars onto the street. In permitting the jury to decide the negligence of the parties, the court stated that only in the clearest of cases where the facts are undisputed should relative degrees of fault be determined as a matter of law. See, also, *Lyons v. Nasby*, 770 P.2d 1250 (Colo. 1989); *Robinson v. Westover*, 101 Idaho 766, 620 P.2d 1096 (1980). In *Lillemoen v. Gregorich*, 256 N.W.2d 628 (Minn. 1977), there was evidence of the possible negligence of the defendant. The court stated that the evidence clearly supported the conclusion that the plaintiff, who failed to avoid or take proper precautions on steps

he knew were icy, was negligent. The court held that in such circumstances, the jury should be permitted to apportion the negligence between the plaintiff and the defendant. See, also, *Winge v. Minnesota Transfer Railway Co.*, 294 Minn. 399, 201 N.W.2d 259 (1972).

We find the reasoning and the holdings in the above cases applicable to the case before us. The fact that a plaintiff's negligence may have been more than slight as a matter of law under the slight-gross contributory negligence standard does not automatically equate with negligence that equals or exceeds the defendant's. We now hold that where reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom recovery is sought, the apportionment of fault must be submitted to the jury. Only where the evidence and the reasonable inferences therefrom are such that a reasonable person could reach only one conclusion, that the plaintiff's negligence equaled or exceeded the defendant's, does the apportionment of negligence become a question of law for the court.

Having adopted this rule, we next examine the evidence regarding the negligence of both Traphagan and Mid-America. The trial court refused to grant a directed verdict for either party, and the issue of Mid-America's negligence was submitted to the jury to compare the negligence of Traphagan and Mid-America.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996). In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party

against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Ochs v. Makousky,* 249 Neb. 960, 547 N.W.2d 136 (1996); *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995). We first review the evidence of Mid-America's negligence in this light and give Traphagan the benefit of every inference which can reasonably be deduced.

Daniel Staton, an expert witness for Traphagan, classified the Mid-America operation as "mobile" and stated that Mid-America was required by due care and under the Uniform Traffic Control Devices manual and the project plans to place a series of advance warning signs and channelizing cones and to use flaggers for the purpose of notifying the traveling public of the obstruction and to guide vehicles around it. The area of signs and cones, Staton explained, should have been set up for 1 to 1½ miles, wherein the Mid-America crew would work until it became necessary to "leapfrog" to another 1- to 1½-mile section. Mid-America failed to follow any of these procedures.

Mid-America's expert, Darrell Deering, classified its operation as "moving," and his report stated that warning signs, flashing vehicle lights, and/or trailing devices should have been used. Staton testified that even if Mid-America's operation was classified as "moving," rather than "mobile," Mid-America failed to comply with the prescribed safety precautions. Staton stated that for a moving operation, a shadow vehicle advising of the lane being blocked ahead would be required.

On the day of the accident, Mid-America did not use a shadow vehicle. Other than one orange road sign stating "Road Construction Next 11 Miles," which was located 7½ miles from the scene of the accident, there were no other advance warning signs, cones, or flaggers warning that a stopped vehicle was blocking the lane ahead. The record indicates that Mid-America's employees were not wearing the orange vests required for road work and that there were no other flags or signs which would indicate the truck's presence.

Although the flashing beacon was operating on top of Mid-America's truck, Dr. Freeman Hall, Jr., an expert witness for Traphagan, testified that to a person traveling east toward the

beacon, the light would not be very effective because the beacon would be "front lit." Hall further testified concerning visual perception problems presented by the Mid-America truck on the afternoon of September 21, 1992. He described what he considered to be two separate and distinct problems: (1) It would be difficult to recognize that there was a truck on the highway, and (2) it would be difficult to recognize that the truck was stopped. He considered it significant that the new pavement on the highway was black and that the undercarriage of the truck was also black. He opined that because of this, there would be no discernible shadow moving down the highway. Hall also testified that there was a "jumble" of objects in the back of the truck which would constitute a "dazzle camouflage," inhibiting recognition of the truck.

Gary Burke testified that he encountered the Mid-America truck on the day of the accident approximately 2 miles west of where Traphagan later collided with it. When Burke first saw the truck, he thought it was moving. It was not until he was 400 to 500 feet away that he realized the truck was not moving. Burke had to brake hard, but he was able to pass the truck on the left. Burke testified that he did not see the flashing amber beacon until after he had passed the truck and looked in his rearview mirror.

Ralph Rhoads, who lives less than a mile from the accident scene, testified that prior to the accident, he had watched the Mid-America truck for 12 to 15 minutes as Mid-America employees removed centerline tape from the road. He testified that he observed several vehicles approaching the truck too fast and having to brake quickly to avoid it. Harley Putzke, an employee working in a Mid-America truck east of the accident, testified that earlier in the day, a trucker who encountered the Mid-America truck in question complained to Putzke that he had "damn near run over" one of the workers at the Mid-America truck.

John Wendell, president of Mid-America, sent three employees and two trucks to remove the centerline tape on that particular portion of Highway 20. Of those three employees, two were new and had never received training concerning traffic safety other than some general directions to use safety equip-

ment and to use common sense to protect the motoring public. The evidence further showed that the two newer employees had no experience in removing centerline tape and that even the senior employee, Putzke, denied having experience in pulling centerline tape.

Ordinary negligence is defined as doing something that a reasonably careful person would not do under similar circumstances, or failing to do something that a reasonably careful person would do under similar circumstances. *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995). Therefore, it is clear from the record that there is evidence of Mid-America's negligence. We find that a reasonably careful person would not have failed to take the necessary precautions to warn oncoming motorists of the vehicle in the eastbound lane of traffic and that, therefore, the evidence was sufficient for a jury to find that Mid-America was negligent.

The trial court found that Traphagan was negligent as a matter of law. In finding that Traphagan was negligent as a matter of law for operating her vehicle at such a speed that she could not stop within the range of her vision, the court noted that it was "absolutely plain that she violated Nebraska law on the range of vision rule and that's a matter for the Court to decide that she was . . . guilty of negligence." Under the range of vision rule, a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision. *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995); *Horst v. Johnson*, 237 Neb. 155, 465 N.W.2d 461 (1991).

There was evidence presented at trial that the Mid-America truck was discernible within Traphagan's range of vision. Bridget Turman, who was following Traphagan shortly before the accident, testified that the Mid-America truck was visible at least for a time from about 1 mile away. Turman stated that the weather was sunny and the sky was clear. As Turman was traveling behind Traphagan's vehicle, she noticed a white flatbed truck on the highway. She saw a yellow flashing light on the cab of the truck. There were two people standing next to the driver's side door of the truck. Turman knew that the truck was not mov-

ing. She then saw Traphagan's car get closer and closer to the truck and saw the car hit the rear end of the truck.

Hall, Traphagan's expert witness, testified that as Traphagan approached the truck, she was presented with two visual perception problems: (1) She had to recognize that there was a truck on the highway, and (2) she had to recognize that it was stopped. Hall then proceeded to explain what, in his opinion, would have affected Traphagan's ability to perceive the truck as she approached it on the highway.

An exception to the range of vision rule exists when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and relatively indiscernible. *Nickell v. Russell, supra.* Hall's testimony does not rebut the undisputed evidence that Turman, who was following Traphagan, observed the truck from about 1 mile away. Therefore, we find that the personal representative did not establish any exception to the range of vision rule and that the trial court correctly determined that Traphagan was negligent as a matter of law.

However, from our review of the record we cannot say as a matter of law that Traphagan's negligence equaled or exceeded Mid-America's negligence. The trial court properly submitted the negligence issue to the jury in order to have it compare Traphagan's negligence to the negligence of Mid-America. We cannot say that the jury was clearly wrong in the determination that it made.

Mid-America's remaining assignments of error relate to the jury instructions requested and given during the trial. Mid-America claims it was prejudicial error for the trial court to refuse its requested instruction No. 7, which stated: "The Nebraska Statute that applies to this case provides as follows: Except as not relevant to this case the Nebraska 'Rules of the Road' do not apply to persons, motor vehicles and other equipment while actually engaged in work upon the surface of a highway." Mid-America's proposed instruction was based upon Neb. Rev. Stat. § 39-606 (Reissue 1988) (now codified at Neb. Rev. Stat. § 60-6,112 (Reissue 1993)).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996). Although the instruction requested by Mid-America is a correct statement of the law, it was not error for the trial court to refuse such an instruction.

Instruction No. 8, given by the court, which set forth the statement of the personal representative's case and the issues, provided in part as follows:

1. Plaintiff's Claims

A. Issues

1. [The personal representative] claims that Mid-America was negligent in one or more of the following ways:

A. In stopping the pickup in the eastbound lane of traffic.

B. In failing to properly warn Kathy Traphagan by setting out advance warning signs and/or flaggers to warn of the stopped pickup.

C. In failing to provide proper channelization of the traffic around the stopped pickup.

D. In failing to properly train, monitor and supervise its employees in the principles of safe traffic control.

2. [The personal representative] also claims that the negligence was the proximate cause of the accident and the death of Kathy Traphagan and seeks a judgment against Mid-America for the damage to her next of kin.

Instruction No. 11 further instructed the jury that "[o]ne who places an obstruction upon a highway in such a manner that it is dangerous to others using the highway has a duty to use due care to warn others upon the highway of the danger incident to the obstruction."

Although allegations relating to the Nebraska Rules of the Road did initially appear in the personal representative's petition, it is apparent that this issue was not submitted to the jury for its consideration. No reference to these rules was found in

the evidence, argument, or instructions presented to the jury. An instruction on a matter not an issue in the litigation distracts the jury from its effort to answer legitimate, factual questions raised during the trial. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). Mid-America has therefore failed to show that the tendered instruction was warranted by the evidence or by the pleadings.

Next, Mid-America asserts that the trial court erred in giving instruction No. 10, a negligence standard measured by a reasonably careful person with physical abilities identical to the person accused of negligence. Mid-America argues that it was prejudicial error for the court to refuse to submit instead the standard "reasonably careful person under similar circumstances" instruction (NJI2d Civ. 3.02).

All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995). Instruction No. 10 stated in relevant part as follows:

> Negligence is doing something that a reasonably careful person with physical abilities identical to those of the person accused of negligence would not do under similar circumstances, or failing to do something that a reasonably careful person with physical abilities identical to those of the person accused of negligence would do under similar circumstances.
>
> . . . .
>
> Drivers are negligent if they do something a reasonably careful driver in the same situation would not have done or failed to do something a reasonably careful driver in the same situation would have done.

Mid-America claims that this instruction was not supported by the evidence and, therefore, confused and misled the jury. We find that it was proper for the trial court to give such instruction and that the instruction is a correct statement of the law.

For purposes of a physical disability, the generally accepted standard of care is, as for any other person, ordinary care under the circumstances. However, a person's disability is one of the

circumstances to be considered in determining whether such person exercised ordinary care. Thus, in *Storjohn v. Fay*, 246 Neb. 454, 466, 519 N.W.2d 521, 530 (1994), we stated: "One who is ill must conform to the standard of a reasonable person under a like disability . . . ." Depending on the circumstances, a reasonably careful person with a like disability may be required to put forth a greater degree of effort than would be necessary by others in order to exercise ordinary care under the circumstances. Clearly, instruction No. 10 was a correct statement of the law and was not misleading.

Moreover, instruction No. 10 covered issues supported by the pleadings and the evidence. The issue of Traphagan's physical disability was raised by Mid-America in its answer to the second amended petition. Mid-America alleged that Traphagan was contributorily negligent in operating her motor vehicle with inadequate vision and that she assumed the risk of her injuries by operating a motor vehicle with her visual disability. At trial, the personal representative's evidence showed that Traphagan's physical disability required her to wear special glasses and to have mirrors on both doors of her vehicle. Evidence was further adduced indicating that Traphagan was, in fact, wearing such glasses at the time of the accident and that mirrors were on both doors of her vehicle.

Mid-America's requested instruction No. 3 stated: "Negligence is doing something that a reasonably careful person would not do under similar circumstances, or failing to do something that a reasonably careful person would do under similar circumstances." We further find that it was not error for the trial court to refuse to give such an instruction, since the substance of Mid-America's proposed instruction was contained in the instructions actually given. See *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

Mid-America also asserts that the trial court erred in giving instruction No. 13, which provided: "One who enters into a contractual relationship is charged with knowledge of the contents of the contract and is bound thereby." It is clear, and Mid-America does not dispute, that instruction No. 13 is a correct statement of the law. See, e.g., *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989), *overruled on other grounds, Anderson*

*v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992). Mid-America argues, however, that there was no issue as to whether Mid-America knew or did not know what was in the contract and that, therefore, the instruction was unnecessary and served only to confuse and mislead the jury into thinking that there was an issue as to Mid-America's knowledge regarding the contract.

Contrary to Mid-America's contention, instruction No. 13 does not indicate to the jury that there is an issue as to whether or not Mid-America knew what was in the contract. Rather, instruction No. 13 explicitly makes such actual knowledge irrelevant. The relevance of instruction No. 13 to the evidence presented was the fact that the safety measures required under the contract by which Mid-America was bound helped to establish Mid-America's duty of care. The specifications in the subcontract are the Nebraska Department of Roads' 1985 Standard Specifications for Highway Construction. Section 937.01 of the specifications states:

> The contractor shall provide, erect, and maintain all necessary barricades, suitable and sufficient lights, hazard beacons, other signs, provide a sufficient number of watchmen, and take all necessary precautions for the protection of the work and the safety of the public. . . .
>
> . . . The contractor shall erect warning signs in advance of any place on the project where operations interfere with the use of the road by traffic . . . .

Section 937.03 provides in part: "It shall be the responsibility of the contractor to furnish flagger(s) to direct traffic when his equipment is operating over or adjacent to the roadbed being used by the traveling public." Section 937 provides that the failure to exert and maintain traffic protective devices shall be reason to temporarily suspend work.

The contracts and the specifications contained therein are relevant to the duty of care that would be foreseeable to a reasonably careful person in similar circumstances. As such, we find it was not error for the trial court to submit instruction No. 13.

We next address instruction No. 14, which stated: "Inconvenience or the cost of compliance cannot excuse a party from the performance of an absolute and unqualified undertaking to

do a thing that is required, possible, and lawful." The personal representative's petition alleged that Mid-America was negligent in failing to place signs and use flaggers to warn Traphagan of the hazard on the highway created by Mid-America. The contract documents required Mid-America to comply with the specifications and the Manual on Uniform Traffic Control Devices. Included within such specifications were the above requirements for signs and flaggers.

While always forming his testimony in terms of concern for the workers' safety, Mid-America's president, Wendell, presented testimony from which a jury could reasonably infer that inconvenience or cost of compliance was a factor in his decision not to provide warning signs. Wendell described in detail how the placing of such signs was dangerous for the workers and required extra work. The testimony presented an issue as to whether Mid-America could be excused from the safety requirements for any of the reasons given by Wendell. It was not error for the trial court to submit instruction No. 14.

Finally, we address the personal representative's cross-appeal, in which he assigns two errors: (1) the trial court's submission of Traphagan's negligence to the jury and (2) the trial court's directing a verdict finding Traphagan contributorily negligent.

We have already held that the Mid-America truck was discernible within Traphagan's range of vision and that the personal representative failed to show that Traphagan fell within any exception to the range of vision rule. As such, the trial court did not err in directing a verdict finding Traphagan contributorily negligent. Therefore, it was correct for the trial court to leave to the jury the apportionment of negligence. Therefore, the personal representative's cross-appeal is without merit.

For the reasons set forth in this opinion, the judgment of the district court is affirmed and the cross-appeal is dismissed.

AFFIRMED.

GERRARD, J., concurring.

I agree with the rule announced by the majority regarding the circumstances under which apportionment of fault must be submitted to the jury, and I concur in the result of the instant case.

However, I write separately to address the propriety and effect of the trial court's directed verdict of Traphagan's negligence.

This court has long held that a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision. *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996); *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). However, as the majority notes, we have established an exception to the general rule where a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and relatively indiscernible. *Nickell v. Russell, supra.* When the facts of a case fall within the exception to the range of vision rule, then the determination of negligence becomes a question for the jury. *Id.*

In the present case, the evidence as to the discernibility of the Mid-America truck was disputed. On the one hand, Bridget Turman, who was traveling behind Traphagan, testified that she was able to discern the truck from about 1 mile away and observed that it was not moving. On the other hand, Dr. Freeman Hall, Jr., testified that (1) Turman had the benefit of Traphagan's car juxtaposed between her position and the Mid-America truck by which to gauge the movement of the truck and (2) two visual perception problems could have interfered with Traphagan's ability to perceive the truck, specifically the lack of a discernible shadow moving down the highway and the camouflage effect of the "jumble" of objects in the back of the truck. Ralph Rhoads testified that prior to the accident, he observed several vehicles approaching the truck too fast and having to brake quickly to avoid it.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996). There was a question presented as to whether or not Traphagan was able to discern the truck and, consequently, a question presented as to whether or not the facts of this case fall within the exception to the range of vision rule. Accordingly, the directed verdict

against the personal representative was erroneous, and the question of Traphagan's negligence ought to have been submitted to the jury.

However, we have held that error without prejudice provides no ground for appellate relief. *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993); *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991). The issue, thus, is whether the personal representative was prejudiced by the directed verdict. We have not, heretofore, addressed the effect of an erroneous directed verdict against one of the parties when a jury ultimately compares relative degrees of negligence and apportions damages under the new comparative negligence statute. Other jurisdictions have considered the adequacy of jury instructions and the record as a whole in determining whether a party is prejudiced by the granting of an erroneous directed verdict in a comparative negligence case. See, e.g., *Ricklin v. Smith*, 670 P.2d 1239 (Colo. App. 1983); *Niedbalski v. Cuchna*, 13 Wis. 2d 308, 108 N.W.2d 576 (1961).

In essence, comparative negligence "abrogates the common-law concept of contributory negligence, thus relieving both parties of an all-or-nothing situation, and substitutes apportionment of the damages by fault." John J. Palmer & Stephen M. Flanagan, Heft & Heft's Comparative Negligence Manual § 1.10 at 3 (rev. ed. 1986). Because its purpose is to allow juries to compare relative negligence and to apportion damages on that basis, the court in *Ricklin v. Smith, supra*, held that it was error for the trial court to fail to tell the jury what conduct of a party prompted the trial court to enter a directed verdict. The court reasoned that "[t]he jury needed to know the [trial] court's reason for the directed verdict in order to make a comparison of the relative fault of each party." *Id.* at 1241. The reasoning of the court is persuasive.

In considering the record and the jury instructions in the instant case, the jury was told what conduct of Traphagan prompted the trial court to enter a directed verdict against the personal representative, and what specific conduct of Mid-America potentially violated its duty of reasonable care. Thus, the jury had access to the applicable law to determine both parties' comparative negligence. See *Watson v. Regional*

*Transp. Dist.*, 729 P.2d 988 (Colo. App. 1986). The jury was also instructed to "not consider the ruling of the Court concerning contributory negligence in deciding the issue of Mid-America's negligence or in deciding how the negligence of Kathy Traphagan compares in degree to any negligence [attributable] to Mid-America." The jury was told that it may attribute "any amount" less than 100 percent of the negligence to Mid-America.

Thus, even though the trial court erroneously directed a verdict regarding Traphagan's negligence, the jury was properly instructed to weigh the relative contributions of the parties' negligence under the comparative negligence statute. Apportioning the relative negligence of the parties required the jury to evaluate Traphagan's negligence, as well as the negligence of Mid-America. It was within the jury's province to assign as little as 1 percent of the negligence to Traphagan; they did not do so. Instead, the jury not only found Traphagan negligent as instructed, but assigned 25 percent of the comparative negligence to Traphagan and 75 percent to Mid-America.

I cannot conclude that the personal representative was prejudiced in the instant case when utilizing the standards enunciated herein. The record as a whole supported a finding that both Traphagan and Mid-America were negligent and supported the apportionment made by the jury. Furthermore, the jury was told what specific conduct on the part of each party potentially constituted negligence so that they could make an informed comparison of the relative fault of each party. See *Ricklin v. Smith, supra.* The jury was also properly cautioned not to give greater importance to the negligence found by the trial court than that found by the jury. See *Niedbalski v. Cuchna, supra.*

For these reasons, the personal representative's cross-appeal is properly dismissed, and I concur in the result reached by the majority.

WHITE, C.J., and CAPORALE and FAHRNBRUCH, JJ., join in this concurrence.